544 So.2d 1352 (1988)
Loyce Edward BURNSIDE
v.
STATE of Mississippi.
No. 57788.
Supreme Court of Mississippi.
December 21, 1988.
As Modified on Denial of Rehearing June 7, 1989.
M. Marcia Smalley, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.

ON PETITION FOR REHEARING
PRATHER, Justice, for the Court:
In this criminal appeal from the Circuit Court of Yazoo County, Mississippi, Loyce Edward Burnside was convicted of rape and sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. Feeling aggrieved of this conviction, Burnside appeals and assigns as error:
(1) The court below erred in not granting the motion of the appellant to suppress appellant's alleged confession;
(2) The court below erred in not granting the motion of the appellant to suppress the evidence and testimony obtained as a result of an unreasonable search and seizure of the appellant without proper consent thereto; and
(3) The court below erred in not sustaining the appellant's motion for a new trial.

I.
Mrs. Helen Odom, 65 years old, was living alone in Jonestown, Mississippi, her husband having recently died. On March 6, 1986, Mrs. Odom went to bed around 11:00 or 11:30 p.m. After midnight, a man entered her bedroom, assaulted her and forcibly had sexual intercourse with her. Additionally, Mrs. Odom testified that the man threatened to kill her if she told anyone about the rape.
Prior to this attack, Mrs. Odom had seen her assailant in and around the neighborhood. She recognized him immediately after he came into her bedroom, and although she did not know his proper name, she knew him by a nickname.
Following the incident, a police officer drove Mrs. Odom to the hospital and took a preliminary verbal report from her. She also gave a statement at the jail.
The doctor who examined Mrs. Odom at the hospital, observed that she had a *1353 bruised lip, a torn and bleeding vaginal entrance with fluid coming from the vaginal opening. The doctor testified that Mrs. Odom was "very alert and ... seemed to have a very clear version of the events which happened." The doctor completed a sexual assault kit and delivered it to the police officers. From the victim's description, Loyce Edward Burnside was picked up and voluntarily submitted to a male rape kit test.
On the following morning, Yazoo Police Captain Wade Woods and Chief Fleming interviewed Burnside. According to Woods, Burnside stated that he understood his rights and executed a rights waiver. Woods also claims that Burnside told both him and Officer Jimmy Fleming that "he had entered the residence by way of a window." Upon gaining access to the house, Burnside "placed some items of clothing over her face ... and ... had sex with her."
At trial Larry Turner, forensic serologist with the Mississippi Crime Laboratory, analyzed the contents of this kit as well as evidence taken from the body of Burnside, and concluded that the vagina sample contained "seminal fluid ... from a person who is [blood] Type B and a secreter," characteristics exhibited by Burnside. At trial, Mrs. Odom positively identified Burnside as the defendant.

II.
Since two of the assignments of error relate to the defendant's motion to suppress a discussion of the procedural posture of these motions would aid understanding. Defendant objected to two items: (1) the male rape test results, and (2) an oral statement of the defendant.
We address the rape kit test results first. While testifying for the State, Larry Turner, a forensic serologist began testifying about his laboratory test results from the male rape kit performed on the defendant during the early hours of March 7. The record reflects that an objection to the test results was made by defense counsel and overruled by the court. Defense counsel asked and received permission to state into the record the "specific objections later," to which the State agreed. The jury received the testimony from the witness.
After Turner's testimony was concluded and the jury excused, the court permitted the defense counsel to state for the record specific objections to the introduction of the male rape kit test results, which were founded in the Fourth and Fourteenth Amendments to the federal constitution "on the illegal seizure from his person," (2) on the Fifth and Fourteenth Amendments to the federal constitution, (3) violation of the defendant's privacy, and (4) denial of the defendant's right to counsel under the Sixth Amendment.
In support of the motion to suppress, the defendant testified that he asked for a lawyer right after he was read his Miranda rights and before he gave any statement. He was not afforded a lawyer to advise him. Defense counsel asked the defendant if he still wanted a lawyer at the hospital, to which he affirmatively replied. Again no lawyer was afforded.
The facts of the record, however, do not bear out this sequence of events. The record reveals that the defendant was in custody at the police station at 1:00 or 1:30 p.m. on March 7, 1986 and seen by Lieutenant Bobby Adams. Adams went to the hospital, saw the victim and advised her to come to the police station after completion of her physical examination for a statement. When Mrs. Odom came to the police station, Burnside had been taken to the hospital. Adams did not testify as to any statement asked or given by the defendant concerning a request for an attorney.
At the hospital, the defendant was asked permission to take a male rape kit. A written consent, dated March 6, 1986, exhibited in court evidenced this agreement, and at trial this consent was received into evidence. Defense counsel agreed to and stipulated that if Officer Adams were to testify regarding the statement that he would testify that the statement was presented to the defendant prior to the taking of any body fluids and that the defendant did so willingly and voluntarily.
*1354 Secondly, as to the verbal statement of the defendant, Captain Woods testified for the State that on March 7, 1986 at 9:00 a.m., he and Chief Fleming gave the defendant his Miranda warnings [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], which he acknowledged to understand. The defendant then signed a statement waiving his constitutional rights, specifically the right to counsel "at this time." The defendant made a verbal statement to the officers, Wood and Fleming. However, only Wood testified on the motion to suppress the statement. Fleming's failure to testify was not explained.
The trial judge overruled both defense motions to suppress the test results and the confession. He noted that no motion was made prior to trial and that he had previously been assured that a waiver would be introduced into evidence.

III.

DID THE COURT BELOW ERR IN NOT GRANTING THE MOTION OF THE APPELLANT TO SUPPRESS APPELLANTS ALLEGED CONFESSION?
The defendant Burnside asserts that he invoked his right to counsel when being questioned by police officers. Mississippi Constitution, Art. 3, section 26; United States Constitution Amendment VI. At issue in this assignment if whether the State met its burden of proof to overcome the defendant's testimony that he asked for an attorney. This Court's search of the record fails to show any denial by interrogating any officers that Burnside made this request.
Burnside cites Palmer v. State, 427 So.2d 111 (Miss. 1983). Facing a similar situation in Palmer, this Court wrote, "... [t]hat the third confession was inadmissible due to the questioning of Officer Lumpkin after the appellant had requested the assistance of counsel." Id. at 114. This Court has made it clear that "Fifth and Sixth Amendment rights of the accused are to be jealously guarded and the State will be made to shoulder its heavy burden of proof." In Cannaday v. State, 455 So.2d 713 (Miss. 1984), this Court, citing Edwards v. Arizona, supra, stated:
It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and the conduct of the accused." Id. at 723.
In Reuben v. State, 517 So.2d 1383 (Miss. 1987), this Court faced the question of whether a written confession was voluntary after the accused had invoked his right to counsel. In making this determination, this Court provides some important guidelines. Reviewing the decision in Reuben, this Court held:
In Edwards, supra [Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).] the defendant had invoked his right to remain silent and his right to counsel on January 19, and was given his Miranda warnings and interrogated again on January 20... . The Arizona Supreme Court applied the "totality of the circumstances" test and determined the statement was given voluntarily. The U.S. Supreme Court reversed, finding that "the Arizona Supreme Court applied an erroneous standard for determining the waiver where the accused has specifically invoked his right to counsel."
Id. at 1388.
Further, the United States Supreme Court wrote, in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "If the individual states that he wants an attorney, the interrogation must cease until his attorney is present.'" Id. See also, Arizona v. Roberson, ___ U.S. ___, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).
Recent case law within this State has continued to follow this precedent. Nicholson v. State, 523 So.2d 68, 77 (Miss. 1988); Jimpson v. State, 532 So.2d 985, 988 (Miss. 1988). Burnside testified that he asserted his right to counsel, but that counsel was not furnished. This occurred after he *1355 signed the purported waiver, a fact not disputed in the record. In this state of the facts, Edwards and progeny declare Burnside's confession inadmissible.
Therefore, this Court holds that the Circuit Court erred when it overruled Burnside's objections in connection with the oral confession.

IV.

DID THE COURT BELOW ERR IN GRANTING THE MOTION OF THE APPELLANT TO SUPPRESS THE EVIDENCE AND TESTIMONY PERTAINING THERETO WHICH WAS OBTAINED AS A RESULT OF AN UNREASONABLE SEARCH AND SEIZURE OF APPELLANT WITHOUT PROPER CONSENT

THERETO?
This assignment relates to test results of the male rape kit introduced into evidence over defense objection.
Burnside points out that in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), an intrusion into the body was found to be subject to the Fourth Amendment restrictions against unreasonable searches and seizures. Although the Court in Schmerber made the finding that a warrantless search and seizure by taking of a blood sample was proper under exigent circumstances, the court made it clear that its holding was limited to the facts of that case.
The Schmerber opinion considered the taking of a blood sample as a violation of several constitutional challenges. The Court held, regarding the Fourth Amendment rights to unreasonable searches and seizures, that:
... [T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.
A lady at the hospital asked him to sign a form and Burnside voluntarily signed the following waiver:
On this the 6th day of March, 1986, I, Loyce Edward Burnside, do voluntarily give my permission to have a doctor at the King's Daughters Hospital in Yazoo City obtain from my body any and all samples needed to prepare a male rape kit. Knowing that these samples will be turned over to the Yazoo City Police Department for examination in a rape case. I, Loyce Edward Burnside, do this without any persuasion of any kind.
Additionally, the defendant suggests no unfairness in this procedure.
Therefore, this Court holds that the waiver was sufficient and that the court was correct in the admission of the blood test results. The court rejects this assignment.

V.

DID THE COURT BELOW ERR IN NOT SUSTAINING APPELLANT'S MOTION FOR A NEW TRIAL?
In this third proposition, counsel for Burnside argues that in appellant's motion for a new trial on July 3, 1986, he assigns as grounds, inter alia, that the court had erred in allowing the admission of appellant's statement after appellant testified that he had requested an attorney prior to giving said statement and that the court erred in allowing the admission of the results of blood and other blood fluid tests by the State. This represents a reargument of the former points.
This Court holds that Burnside's Sixth Amendment rights to counsel were violated and that the introduction of the verbal statement made without benefit of counsel was reversible error.
REVERSED AND REMANDED FOR A NEW TRIAL.
*1356 ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, and SULLIVAN, JJ., concur.
ANDERSON, J., and DAN M. LEE, P.J., dissent.
PITTMAN and BLASS, JJ., not participating.
ANDERSON, Justice, dissenting:
I respectfully dissent.
Because of the overwhelming evidence of guilt, and because no reasonable jury would have found the defendant not guilty, I would consider the introduction of his alleged confession constituted harmless error.
I would affirm the conviction and sentence of Loyce Edward Burnside.
DAN M. LEE, P.J., joins this dissent.