585 So.2d 773 (1991)
Terry KUYKENDALL
v.
STATE of Mississippi.
No. 90-KA-0452.
Supreme Court of Mississippi.
September 11, 1991.
*774 Edward C. Fenwick, Jackson & Fenwick, Kosciusko, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
Terry Kuykendall was convicted on two counts of armed robbery in the Circuit Court of Attala County. Kuykendall alleges on appeal that the trial court erred in failing to suppress a statement which Kuykendall made while in custody. We find Kuykendall's allegation to be well taken, and reverse and remand for a new trial.

I.
Around 11:00 p.m. on June 17, 1989, J.C. Erving and his girlfriend, A.L., were watching television at his home in Kosciusko, Mississippi. According to Erving, two men, armed with pistols, forced their way into his home and demanded money. When Erving told them that he had no money, the men ransacked the house. The men then tied Erving up and proceeded to sexually assault A.L. After several hours, and after failing to find any money, the two robbers tied up A.L. and left in A.L.'s car. After Erving and A.L. managed to free themselves, Erving sent A.L. to his father's house so that she could notify the police.
Erving felt that he had recognized one of the assailants. He also believed that the man was staying at the apartment of one Daisy Winters in the Westwood Apartment Complex. Armed with a pistol and accompanied by his nephew, Erving proceeded to the Westwood Apartments. He knocked on Ms. Winters' door and confronted the man he felt had robbed him. A shooting resulted. Erving escaped and subsequently notified the police at his nephew's suggestion.
As a result of Erving's complaint, Officers R.C. French and Phillip Franks went to the Westwood Apartments. They found Terry Kuykendall in Daisy Winters' apartment. Kuykendall admitted that he had fired his pistol when J.C. Erving came to the door of the apartment. Kuykendall said that after the shooting he had thrown his pistol into a nearby wooded area. The officers arrested Kuykendall for discharging a firearm in the city limits.
Terry Kuykendall was indicted on September 12, 1989, by the Attala County Grand Jury for rape, sexual battery, and two counts of armed robbery pursuant to Miss. Code Ann. § 97-3-79 (Supp. 1988).[1] One of the key pieces of evidence introduced against Kuykendall was State's Exhibit 6, a statement Kuykendall made on Monday afternoon, June 19, 1989, while in police custody. Kuykendall admitted in the statement that he and Marcus Cole, both armed, went to J.C. Erving's house on the night in question in order to steal drugs from Erving. Kuykendall also admitted in the statement to having sex with Erving's girlfriend, but maintained that it was consensual. When he and Cole left Erving's house they took two sets of car keys and what Kuykendall thought to be Erving's car. Kuykendall's motive for this encounter was that Erving had allegedly sold some bad drugs to Kuykendall on Friday, June 16. Kuykendall was acquitted on the rape and sexual battery charges, but was *775 convicted on the two counts of armed robbery. He was sentenced to serve two four-year terms in the custody of the Mississippi Department of Corrections, without the possibility of parole. The sentences were to run concurrently.

II.
Terry Kuykendall was arrested at the Westwood Apartments on Sunday, June 18, 1989, between 4:30 and 5:00 a.m., for discharging a firearm in the city limits, a misdemeanor. He was then taken to the police department. There Kuykendall encountered Albert (Bo) Adams, a police officer. According to Adams, he informed Kuykendall of his rights, reading them from a form. He then asked Kuykendall if he understood the rights and would talk to him. Kuykendall said that he would. The waiver form in question is dated June 18, 1989, and has two times filled in: 5:59 a.m. and 6:02 a.m. The form was signed by witnesses Albert Adams and R.C. French. The form is not signed by Kuykendall, as Adams stated that Kuykendall refused to sign, even though he agreed to make a statement. Adams said that Kuykendall did not request an attorney, and there were no threats or promises made. Kuykendall gave a statement about the shooting incident at the Westwood Apartments. He said that J.C. Erving and another person had knocked on his door, and were going to jump him, but he pulled a pistol, and as they ran he fired up into the air. He then threw the gun into some woods behind the apartments. Kuykendall was not questioned at this time about the alleged rape/robbery that had occurred at J.C. Erving's house.
According to Terry Kuykendall, he was informed of his rights "before I was first locked up there, on the morning that they brought me in." He stated that this was the only time he was informed of his rights. It is not clear from the record as to whether Kuykendall is referring to Officer Adams reading him his rights, or whether French and Franks might have done it when they first arrested him.
Officer Adams met with Kuykendall again the next day, Monday morning, June 19, 1989. He was accompanied by Officer Lawrence Brantley. According to Adams, he again informed Kuykendall of his rights, using a waiver form identical to the one used the day before. Adams also informed Kuykendall that he was now under arrest for rape and armed robbery. Once again, Kuykendall agreed to talk, but refused to sign the waiver form. The two times noted on the form are 10:37 a.m. and 10:44 a.m. Once again, Adams said that no threats or promises were made concerning the statement. Adams stated that Kuykendall told them that he and the other assailant, one Marcus Cole, went to J.C. Erving's house because J.C. had sold him some bad drugs. Kuykendall said that they argued but there was no violence. Kuykendall further denied having a pistol and denied any kind of sexual activity with Erving's girlfriend. This statement was recorded. Sometime during the statement, the following exchange took place:

Kuykendall: When will I be able to go to Court on this here and talk to a lawyer or something? I didn't show up for work and I'm quite sure I lost my job already.

Officer Adams: Where are you working?

Kuykendall: I work for Bluff Springs.

Officer Adams: I'll get back with the city attorney and I will be talking to the county attorney  I mean the county attorney, and we'll be talking to him in a few minutes, and I'll let you know something.

Kuykendall: Okay.
Officer Adams did not take Kuykendall's question to mean that Kuykendall was invoking his right to have an attorney present during questioning. Adams thought Kuykendall was asking about when he would be going to court, or when he might be able to see the county attorney, possibly about bond. In Lawrence Brantley's opinion, Kuykendall was asking for an attorney "for the purpose of getting out of jail as soon as possible." According to Terry Kuykendall, he was not informed of his rights before this taped statement was made. He stated that he was told, in *776 response to his question, that he could talk to a lawyer on Tuesday or Wednesday, when he went to court.
After this statement, Kuykendall was returned to his cell. According to Adams, at about 12:30 p.m., the police asked Kuykendall if he would accompany them to the Westwood Apartments to help them find the pistol he said he threw into the woods. The gun was never found. Kuykendall and the police returned to the station.
Back at the station, Adams testified that once again he informed Kuykendall of his rights via a waiver form. Once again, Adams said that Kuykendall agreed to waive his rights and make a statement. Kuykendall again refused to sign the waiver form. Kuykendall eventually made the incriminating statement introduced into evidence as State's Exhibit 6, wherein he states, among other things, "we went to stick him up." Adams testified that no threats or inducements were made to get this statement. Adams stated that no request for a lawyer was made prior to or during this last statement. Officer Brantley concurred in this.
Terry Kuykendall testified that he requested an attorney before this third, incriminating statement was made. He stated that the police told him that "Marc[us Cole] had been down the road once before and they told me that they could make this situation look any way they wanted it to." Kuykendall thought this referred to Marcus' having previously served time. Kuykendall was a high school graduate who had completed one year of college and had received a stationary engineering license, which involved heating and air conditioning systems.

III.
This Court recently provided the following summary of the law in this area in the case styled Kirkland v. State, 559 So.2d 1046, 1047 (Miss. 1990):
Once an accused has requested an attorney, it is improper for either the same or another law enforcement officer to question him about his criminal conduct. The rules regarding admissibility of confessions or other inculpatory statements are familiar. The Miranda warnings must be given. Rule 1.03, Miss.Unif. Crim.R.Cir.Ct.Prac. (1979); Miranda v. Arizona, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966); Jones v. State, 461 So.2d 686, 696-97 (Miss. 1984). The accused must then give a knowing and voluntary waiver of both his right to remain silent and his right of access to counsel. Powell v. State, 540 So.2d 13, 16 (Miss. 1989); Pinkney v. State, 538 So.2d 329, 342 (Miss. 1988).
If the accused indicates in any manner at any time prior to or during questioning that he wishes to remain silent or to have access to counsel, the officers must cease interrogation. Jones v. State, 461 So.2d at 669. Where the accused asks for counsel, the officers may not resume interrogation until counsel has been provided, except where the accused voluntarily reinitiates the discussion of the charges. Leatherwood v. State, 548 So.2d 389, 395 (Miss. 1989); Burnside v. State, 544 So.2d 1352, 1354-55 (Miss. 1988). If the accused requests access to counsel, all officers of the prosecution force are bound thereby even those who have no actual knowledge of the request. See, Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704, 717 (1988).
Where the defendant objects to the prosecution's use of a confession at trial as evidence against him, the prosecution bears the burden of proving beyond a reasonable doubt each fact which is prerequisite to admissibility. Burnside v. State, 537 So.2d 420, 423-24, (Miss. 1988) [modified on denial of rehearing, 544 So.2d 1352 (Miss. 1988)]; Lutes v. State, 517 So.2d 541, 548 (Miss. 1987); White v. State, 495 So.2d 1346, 1347 (Miss. 1986).
See also Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Minnick v. Mississippi, ___ U.S. ___, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). The State concedes that if Kuykendall did invoke his right to counsel on the morning of June 19, then the statement taken on the afternoon of the 19th was taken in violation *777 of Kuykendall's Fifth Amendment right to have counsel present during custodial interrogation and was therefore inadmissible. The trial court's finding of admissibility in this case is reviewed under the manifest error/substantial evidence rule. Saucier v. State, 562 So.2d 1238, 1244 (Miss. 1990).
Though the U.S. Supreme Court has laid down a bright-line rule for what happens after an accused has requested counsel, only general guidelines can be promulgated for what actually constitutes such a request. Smith v. Illinois, 469 U.S. 91, 96 n. 3, 105 S.Ct. 490, 493 n. 3, 83 L.Ed.2d 488, 494 n. 3 (1984), provides several approaches developed in state and federal courts: (1) any mention of or reference to a lawyer qualifies as such a request; (2) there is some threshold standard of clarity for such a request, and the words in question are analyzed under this standard; (3) after an equivocal statement which could be construed as a request for counsel, all questioning must cease except for narrow questions which might clarify the earlier request. If clarification results in the finding that the equivocal statement was a request for counsel, then it must be treated as such under the dictates of Edwards v. Arizona. See Thompson v. Wainwright, 601 F.2d 768 (5th Cir.1979); Owen v. Alabama, 849 F.2d 536 (11th Cir.1988).
Our prior decision fit most nearly the second approach. See Saucier v. State, 562 So.2d at 1242-43 (defendant's request to parole officer that she contact public defender not invocation of right to counsel); Leatherwood v. State, 548 So.2d 389 (Miss. 1989), (defendant's statement that "he might ought to talk to a lawyer first" apparently accepted as invocation of right to counsel). The State relies on Lockett v. State, 459 So.2d 246, 251 (Miss. 1984), in which the defendant stated, in response to being informed of her rights: "I understand, but I don't understand if I should have a lawyer or not." We held that the subsequent statements made by Lockett were admissible, but on the grounds that she had made a knowing and intelligent waiver of her right to counsel. We did not resolve the question of whether the preceding statement was an invocation of Lockett's right to counsel. Lockett, 459 So.2d at 252.
Most recently, in Berry v. State, 575 So.2d 1 (Miss. 1990), this Court thoroughly discussed the third approach identified by the U.S. Supreme Court, as adopted by the Fifth and Eleventh Circuits, although we did not specifically adopt it. We now hold that when the accused makes an equivocal statement suggesting a request for counsel that the interrogation may only continue on the narrow road to ascertain the meaning of the equivocal statement. The interrogating officer must assist in clarifying the statement. See also Holland v. State, 587 So.2d 848 (Miss. 1991).
Both sides provide cases from other jurisdictions giving examples of statements which do and do not qualify as an invocation of right to counsel, and it would serve no purpose to list these cases here. We find that Terry Kuykendall invoked his right to counsel on the morning of June 19, 1989. State's Exhibit 6 should not have been admitted into evidence by the circuit court. Such admission constitutes reversible error. We further find that an interrogating officer, upon eliciting an equivocal statement which could be construed as a request for counsel, has an affirmative duty to attempt to clarify the request before proceeding with the substance of the interrogation. The officer's subsequent finding will determine whether or not interrogation may continue. Terry Kuykendall's conviction is reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Robbery; use of deadly weapon.

Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.