# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01142-SCT

*MELANIE BOSARGE*

*v.*

*LWC MS PROPERTIES, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2013 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| TRIAL COURT ATTORNEYS: | NICHOLAS VAN WISER |
| | RUSSELL MANNING |
| | MICHAEL L. FONDREN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL L. FONDREN |
| ATTORNEY FOR APPELLEE: | NICHOLAS VAN WISER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 02/26/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from an Order Granting Motion for Summary Judgment and Final Judgment awarding LWC MS Properties, LLC ("LWC") a judgment against Melanie Bosarge ("Bosarge"). The trial court found that Bosarge was individually liable for the deficiency balance after foreclosure under the terms of a personal guaranty she executed in relation to a secured loan made to her company, Indian Head Station, LLC ("Indian Head"). On appeal, Bosarge contends a material issue of fact existed, *inter alia*, as to the value of the property securing the debt, that LWC should not have been permitted to maintain suit as a

dissolved corporation, and that Bosarge should have been allowed to amend her pleadings and answer under Mississippi Rule of Civil Procedure 15. This Court reverses and remands with respect to summary judgment, and finds the second and third issues should be addressed by the trial court upon remand.

## STATEMENT OF FACTS

¶2. On September 22, 2008, LWC, through its owner, Larry Cooper, obtained a balloon promissory note for $3,500,000 (plus interest) from Indian Head. Indian Head's owner and only member was Melanie Bosarge. The note was secured by a Deed of Trust for the Indian Head property, and was, in effect, a purchase-money transaction to buy the property and repair damage to the property's hotel from Hurricane Katrina. The note required Indian Head to make monthly interest payments and satisfaction of the entire unpaid amount at the note's maturity. Bosarge separately signed an individual continuing guaranty in favor of LWC that would make her personally liable for the unpaid amount in the event Indian Head defaulted.

¶3. The note and deed of trust contained the following relevant language:

For the purpose of inducing LWC MS Properties, LLC, (hereinafter called "Lender"), to advance, continue or further extend credit to Indian Head Station, LLC, (hereinafter called "Customer"), the undersigned (hereinafter collectively called "Guarantor" whether one or more), guarantees the prompt and full payment to Lender of all indebtedness and liabilities of Customer of all kinds which are now or hereinafter may be owing to Lender (whether created directly or acquired by Lender indirectly by assignment or otherwise, and whether now existing or hereafter arising, absolute or contingent, joint and/or several, due or to become due, primary or secondary, and all renewals and extensions thereof) up to the principal amount of Three Million Five Hundred Thousand Dollars and No/100 ($3,500,000.00) and in addition, all related interest, attorney's fees, collection costs and other fees and charges of any nature and kind, hereafter referred to as demand by Lender. Guarantor's

2

liability hereunder may under no circumstances be affected or impaired by the existence, from time to time, of total obligations owing by Customer to Lender in excess of the amount herein guaranteed. This is the Continuing Guaranty which will remain in effect until all of the obligations are fully repaid and satisfied by Customer Guarantor.

The guaranty further contained a notice to Bosarge, which stated as follows:

You are being asked to guarantee this debt. Think carefully before you do so. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The Lender can collect this debt from you without first trying to collect the debt from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

¶4. LWC alleged Indian Head later defaulted by failing to pay the monthly interest payments.[1] Upon Indian Head's default, LWC declared the entire note amount due, which was $3,500,000 plus interest and other costs. LWC does not specify the date of default, and the record points only to LWC's subsequent foreclosure proceedings in May 2011.[2] LWC obtained an appraisal of the property securing the loan in April 2010 that appraised the fair market value of the property at $900,000 as of March 25, 2010. Shortly thereafter, LWC conducted a foreclosure sale. A representative for LWC submitted the only bid at the auction and bought the property with a bid for $1,000,000.

_____

[1]The record does not state when this default occurred. In LWC's Motion for Summary Judgment, LWC references the affidavit of Scharlean Cooper, stating "Indian Head defaulted under the terms of the Note and Deed of Trust by failing to make the agreed-upon payments to LWC when same became due," but neither LWC nor Cooper enlightened this Court to the date of default, or how many payments had been made prior to that default.

[2] Presumably, if a default occurred, it happened sometime between September 2008 and May 2011.

¶5.	After foreclosure, LWC resold the property for $1,200,000. Following the sale, LWC applied the October 2011 sale price to the amount it claimed Bosarge owed, thereby reducing the overall amount it sought from Bosarge to $2,300,000. Pursuant to the terms of the note, in addition to the overall indebtedness, Indian Head agreed to pay attorney's fees, plus costs, in the event it defaulted. Pursuant to the terms of the guaranty, Bosarge made herself individually liable for the indebtedness owed by Indian Head to LWC, including all costs of collection, court costs, and attorney's fees.

## PROCEDURAL HISTORY

¶6.	LWC filed a complaint alleging two counts against Bosarge. LWC alleged that Bosarge was indebted to LWC for $2,250,000, as the deficiency balance under the note. LWC further alleged that Bosarge had committed willful and malicious waste by removing certain fixtures from the foreclosed property, which LWC claims caused damage totaling $500,000. Additionally, LWC sought attorney's fees in the amount of $75,000 for a total judgment of $2,825,000, plus interest and costs.

¶7.	Bosarge, appearing *pro se*, filed her answer and affirmative defenses, including an affidavit in which she maintained the $3,500,000 had never been transferred to Indian Head. After a lengthy discovery period, LWC filed a Motion for Summary Judgment and an accompanying memorandum brief. After retaining counsel, Bosarge filed an answer to LWC's brief, and Bosarge further moved for time to complete discovery, to obtain an appraisal, and to submit a formal answer to LWC's summary judgment motion. The court

4

then entered an order holding LWC's summary judgment motion in abeyance. In doing so, the trial court allowed Bosarge an additional thirty days to complete discovery.[3]

¶8. Bosarge subsequently filed a designation of expert, naming the appraiser, Kim Seaman, as her expert witness. Seaman performed an appraisal of the subject property, which was attached to the designation, showing an appraised value of $3,400,000 as of April 13, 2010. On the same date, Bosarge filed her supplemental response to LWC's Motion for Summary Judgment.

¶9. In her response to LWC's Motion for Summary Judgment, Bosarge contended that there were genuine issues of fact that could be determined only by a jury. Specifically, Bosarge took direct issue with the appraisal amount submitted by LWC valuing the property at $900,000, both in light of the appraisal conducted by Seaman and because the property was worth more than this amount in its post-Katrina state, prior to the $600,000 worth of renovations Bosarge made on the hotel. And further, Bosarge alleges she was required by LWC to insure the property for more than $2,000,000, to further her point that the hotel was worth more than its appraised value. Moreover, Bosarge argues, LWC's appraisal was inaccurate and poorly conducted–even by the appraiser's standards. For example, the

---

[3] Bosarge subsequently filed a Motion to Dismiss on the basis of LWC's administrative dissolution. LWC renoticed its various motions and Bosarge noticed her Motion to Dismiss for the same date. It was only after Bosarge noticed her motion and sent a copy to LWC's counsel that LWC realized that it had been administratively dissolved. Thereafter, LWC's counsel took the necessary steps to reinstate LWC with the Office of the Secretary of State and provided the documents to the trial court as an exhibit to its response to Bosarge's Motion to Dismiss. Ultimately, LWC was reinstated, and could properly maintain its suit against Bosarge. *See* Miss. Code Ann. § 79-4-14.21(f) (Rev. 2013) (providing "A corporation that has been administratively dissolved may not maintain any action, suit or proceeding in any court of this state until the corporation is reinstated.")

appraisal claimed that, in order for the appraisal to be minimally reliable, the appraiser would have to inspect at least ten percent of the property. He admits, though, to viewing only one of the hotel's sixty-six rooms. Further, Bosarge points to the basis for LWC's appraiser's low valuation, where using the income approach of appraisal, LWC's appraiser did not use any of Indian Head's actual income data in generating an appraisal of the hotel's worth. Instead, the appraiser used calculations from incomparable motels, where income was half to a quarter of that which Indian Head historically made. Bosarge further alleged, and this Court would find most central, that neither she nor Indian Head received the full $3,500,000 owed under the note. Bosarge claimed Indian Head purchased the hotel and property and invested in renovations; but she asserted the remainder of the $3,500,000 was never transferred to her or Indian Head. Other than Bosarge's affidavit, neither party has offered any other evidence to confirm or refute this claim.

¶10. The trial court set LWC's Motion to Compel Discovery and Motion for Summary Judgment for June 6, 2013, by fiat. Afterward, Bosarge filed a Motion to Amend her original answer and a Motion to File Counterclaim. These motions were set to be heard at the June 6 hearing as well.

¶11. On June 6, 2013, the trial court granted LWC's Motion for Summary Judgment and ordered that a final judgment be entered. The court found that all other pending motions (LWC's motions to compel and Bosarge's motions to amend, file a counterclaim, and dismiss) were moot in light of the ruling on summary judgment. Thereafter, the trial court entered its Order Granting Motion for Summary Judgment and Final Judgment, awarding LWC a judgment against Bosarge in the amount of $2,670,000, which included accrued

6

interest until June 1, 2013, and interest thereafter at the rate of seven percent per annum going forward.

¶12.    Subsequently, Bosarge timely filed her Notice of Appeal in this action, setting up the instant appeal.  Bosarge raises three issues on appeal, but because the latter two issues were dismissed without consideration by the trial court after it granted summary judgment, this Court addresses only the first, regarding summary judgment.  This issue is restated as follows:

> **Whether a material issue of fact exists as to the amount of indebtedness owed by Indian Head as debtor, or by Bosarge as guarantor, to LWC.**

¶13.    Because we cannot discern whether Indian Head made interest payments, whether credit existed for principal reduction, and whether the court's order accounted for Bosarge's contention concerning the amount transferred from LWC to Indian Head, we find significant factual disputes exist as to the amount of indebtedness owed by Indian Head or Bosarge.  In reversing summary judgment in light of the existence of material factual issues, this Court additionally remands with instructions for the lower court to consider the other motions pending at the time summary judgment was granted.

## DISCUSSION

¶14.    In reviewing a trial court's grant of a motion for summary judgment, this Court conducts a *de novo* review and "examines all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (Miss. 2001). The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the nonmoving party must be given the

7

benefit of the doubt concerning the existence of a material fact. *Id.* "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor." *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005). Additionally, this court reviews conclusions of law, including statutory interpretation, *de novo*. *J. Criss Builder, Inc. v. White*, 35 So. 3d 541, 543 (Miss. Ct. App. 2009). When a motion for summary judgment is made and supported as provided in Mississippi Rule of Civil Procedure 56, an adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing there is a genuine issue for trial. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000). If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed. *Id.*

¶15. The trial court granted summary judgment in favor of LWC after finding no material factual issue existed to preclude judgment. The order granting summary judgment is reproduced below, as follows:

> Having come on this day for consideration on the Motion for Summary Judgment filed by and on behalf of [LWC] and the [c]ourt having considered the Motion and the Memorandum Brief in support thereof together with the exhibits thereto as well as the response that has been filed on behalf of [Bosarge] and having reviewed the pleadings and considered arguments and representations of counsel and specifically having reviewed the loan documents and the personal guaranty forming the basis for this lawsuit, the [c]ourt is of the opinion there exists no genuine issue of any material fact and that [LWC] is [entitled] to judgment as a matter of law; it is further
>
> Ordered and Adjudged, that upon the *ore tenus* objection to the quantum of attorney's fees made by [Bosarge] to [LWC's] claim of $766,590.00 in attorney's fees counsel for [LWC] agreed to waive any claim for attorney's fees. *The [c]ourt is therefore of the opinion that judgment should be entered by separate judgment, in the amount of $2,250,000.00, plus interest at the*

8

*contract rate of 7% accruing from September 1, 2010 forward.* The [c]ourt finds that interest is accruing, pre-judgment at the rate of 7% per annum (or monthly at the rate of $13,125.00 (per month) from September 1, 2012 through May 31, 2013 for a total pre-judgment interest accrual of $420,000.00; it is therefore

> *Ordered and Adjudged, that judgment be entered in the amount of $2,250,000.00, being the principal amount remaining due under the personal guarantee plus $420,000.00 of interest accruing from September 1, 2010, until June 1, 2013 forward for a total of $2,670,000.00, which amount shall carry interest at the contract rate of 7% per annum from June 1, 2013 forward.*

> Ordered and Adjudged, the [c]ourt finds that all other pending motions on either side are hereby dismissed as moot.

(Emphasis added.) As iterated in the order, the court found the total amount owed was $2,670,000, and a final judgment against Bosarge was entered for $2,670,000.

¶16. Because we cannot confirm that the total indebtedness owed is, in fact, $3,500,000, this Court finds a material factual issue does exist, and that its existence precludes summary judgment.[4] As plaintiff in this action, LWC has the burden to establish the amount owed as the first step to obtaining a deficiency judgment following foreclosure.[5] Not only does LWC

___

[4] We are confident that Bosarge is liable under the guaranty, but merely question the amount for which she is liable. It is true that the note, the deed of trust and the guaranty each describe a $3,500,000 indebtedness, but Bosarge should be liable only for the amount of money or value of property received by her or Indian Head that was not repaid.

[5] Note, though, that unlike suits where the lender sues the primary borrower, an individual guaranty (as written in the contracts applicable here) does not require foreclosure or fairness of price. The guarantor is immediately liable upon the borrower's (in this case, Indian Head's) default. However, in order to determine the amount Bosarge owes, the judge still needs to do the requisite credit-to-balance deficiency calculation. Thus, Bosarge is incorrect when she claims LWC was required to show the foreclosure sale price was fair, citing ***Hartman v. McInnis***, 996 So. 2d 704, 711 (Miss. 2007) (citing ***Lake Hillside Estates, Inc. v. Galloway***, 473 So. 2d 461, 466 (Miss. 1985)), that "where the foreclosing creditor buys at foreclosure, it must give the debtor fair credit for the commercially reasonable value of the collateral." Here, Bosarge is not the debtor; she is the guarantor, and no such demonstration is required.

fail to establish that it ever transferred $3,500,000 to Indian Head, it also fails to indicate whether any payments had been made toward the alleged $3,500,000 debt. If any payments had been made over the twenty-some months between the origination of the loan and LWC's foreclosure, they would certainly be central to any determination of the remainder owed. As the movant in its Motion for Summary Judgment, LWC has the burden to prove no material factual matter exists, and in absence of that proof, Bosarge is given the benefit of the doubt. Here, if viewed in the light most favorable to Bosarge, it would appear some monthly payments were made in the nearly two years between the loan's origination and the alleged default, and that these payments would necessarily offset some portion of the indebtedness LWC claims it is owed.

¶17. Both LWC and Bosarge focus more on disputing the worth of the hotel foreclosed upon, despite the fact that Bosarge has consistently asserted she never received $3,500,000, and that she evidenced this contention in her December 2012 affidavit. We note that the gravitus of Bosarge's argument is her weak contention that she is not liable under the individual guaranty. Bosarge and her attorney rely on unsubstantiated assertions that, prior to Larry Cooper's death, Cooper told Bosarge he would never expect her to repay the money in the event that default occurred. And further, Bosarge, through her counsel, chalks up the guaranty to a formality and posits, somewhat vaguely, that the $3,500,000 amount was derived from an anticipated tax scheme to benefit to Cooper. In doing so, Bosarge attempts to use parol evidence to escape a legal obligation. Upon review of the promissory note to Indian Head and the guaranty signed by Bosarge, there is nothing to suggest that Bosarge

10

would not be liable upon default, as the instruments appear to be properly executed, recorded, and acknowledged, and are thus valid and enforceable.

¶18. Still, the total amount of indebtedness applied in this matter remains problematic. Although Bosarge's original presentation of the issue was whether she received the proper credit for her hotel (predicated on the fact that she thinks it was worth significantly more and LWC's appraisal seems to be woefully flawed and incomplete), we intuit her issue presentation is actually the inverse of a more meritorious contention, which she has consistently made from the start: that is, that she never received the $3,500,000, or that the true indebtedness owed is unsubstantiated.

¶19. Because Bosarge's brief opposing summary judgment does present a genuine factual issue, specifically, how much money was transferred between LWC and Indian Head/Bosarge, this Court must reverse summary judgment. The trial court seems to take the signed promissory note and deed of trust at face value to mean that $3,500,000 was, in fact, exchanged, and does so without consideration of any payments Indian Head may have made. Again, there is little Bosarge can do to escape liability under the guaranty, but the guaranty is effective only insofar as a court can determine what she owes. As relayed earlier, the court can determine what Bosarge owes only by investigating the documents. This discrepancy was not reconciled in the record by the court or LWC, even though Bosarge raised doubt on the issue from the inception of this case. This factual question, that is the total indebtedness owed, is an issue to be determined by the jury. And the above issues should, upon consideration, preclude summary judgment.

¶20.    Thus, we find there were clearly facts in dispute that precluded the trial court's grant of summary judgment.  First, the amount received by Bosarge was disputed even before the Motion for Summary Judgment was made, and the credit given–as it is based solely upon LWC's alleged flawed appraisal–also creates a genuine issue of fact that must be submitted to a jury for determination.  Accordingly, this Court reverses the trial court's order for summary judgment and remands with instructions to the trial court to resume the suit and consider the other motions pending at the time summary judgment was granted.

## CONCLUSION

¶21.    This Court reverses summary judgment, as material factual questions remain for determination by a jury; specifically, questions of fact exist regarding the value of the hotel, the reliability of the submitted appraisals, the amount of funds actually transferred to Bosarge or Indian Head, and the amount and number of any payments made pursuant to that loan. Although not addressed by this Court, the other claims raised in this appeal should be considered by the trial court upon remand.

¶22.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR.**