# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-EC-01562-SCT

*CHAKA D. SMITH*

*v.*

*CHARLES E. WEBSTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2015 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY, JR. |
| TRIAL COURT ATTORNEYS: | ELLIS TURNAGE |
| | CHARLES E. WEBSTER |
| | BENJAMIN E. GRIFFITH |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEY FOR APPELLEE: | CHARLES E. WEBSTER (PRO SE) |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 05/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KITCHENS AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. This election contest arises from a November 4, 2014, general election for the circuit judge seat in Mississippi's eleventh circuit district, subdistrict 3 ("subdistrict 11-3 "). The special judge granted Charles Webster's motion for summary judgment, finding no genuine issue of material fact existed regarding which candidate received the most votes in the election. Aggrieved, Chaka Smith appealed. We affirm the trial judge's grant of summary judgment in favor of Webster.

**FACTS AND PROCEDURE**

¶2.    On November 4, 2014, a general election was held for the subdistrict 11-3 circuit judge seat. Subdistrict 11-3 encompasses all voting precincts in Tunica County, as well as certain statutorily designated voting precincts in both Coahoma and Quitman Counties. Both Webster and Smith sought the subdistrict 11-3 seat and, according to the final certifications, Webster won the election by 886 votes. Webster received 3,255 votes, whereas Smith received 2,369 votes. Of the total votes cast, 390 were cast by absentee ballot. Webster received 296 of the absentee ballots and Smith received the remaining 94.

¶3.    After the election had been certified, Smith conducted statutory examinations of the ballot boxes pursuant to Mississippi Code Section 23-15-911(1).[1] During the examinations, Smith requested to photocopy or scan the contents of the ballot boxes. The Coahoma, Quitman, and Tunica County circuit clerks denied these requests.

¶4.    On November 24, 2014, Smith filed a petition in the Quitman County Circuit Court seeking both declaratory relief and to contest the election.[2] Smith sought declaratory relief as to whether a candidate "has a legal right to make photocopies of election documents prior to filing an election contest" during a ballot-box examination under Section 23-15-911(1).

---

[1]In pertinent part, the statute states:

> . . . At any time within twelve (12) days after the canvass and examination of the box and its contents by the election commission or executive committee, as the case may be, any candidate or his representative authorized in writing by him shall have the right of full examination of said box . . . .

Miss. Code Ann. § 23-15-911(1) (Rev. 2015).

[2]Smith filed an amended petition on June 29, 2015, adding a ninth cause of action.

2

Smith further alleged that this Court's order adopting the Mississippi Rules of Civil Procedure created unconstitutional power-sharing between the judicial and legislative branches.

¶5.     Smith also contested the election, alleging violations of elections laws and procedures by election officials during the November 4 election. One of the violations alleged by Smith was that most of the absentee ballot applications and envelopes were in violation of statutory provisions and were commingled to the extent that illegal absentee ballots could not be separated from legal absentee ballots. Webster filed his answer and affirmative defenses, and Special Circuit Judge M. James Chaney Jr. was designated to hear the contest.

¶6.     On January 22, 2015, pursuant to Mississippi Rule of Civil Procedure 34, Smith filed a motion for authority to examine, inspect, and photocopy the contents of ballot boxes used in the subdistrict 11-3 election. Judge Chaney held a hearing and ultimately denied the motion. The special judge concluded that Section 23-15-911(1) does not allow making copies of the ballot-box contents. Further, Judge Chaney stated that Rule 81 limits the application of the Rules of Civil Procedure in election contests and that, even if the rules did apply, Rule 34 had no application to Smith's request.[3]

¶7.     At the hearing, however, Judge Chaney gave Smith fifteen days to submit a list of specific documents from the ballot boxes that she wanted to copy. The trial judge reiterated that only documents pertaining to specific voters should be requested. The special judge also allowed Webster to file objections to Smith's list. Smith submitted her list of documents,

---

[3]Smith filed a petition for interlocutory review of Judge Chaney's order that Smith had no right to copy contents of the ballot box, which a panel of this Court denied.

Webster filed his objections, and the trial judge held another hearing on the matter.

¶8. Brenda Wiggs, circuit clerk of Quitman County, and Charles Oaks, circuit clerk of Coahoma County, testified at the hearing. Wiggs and Oaks testified that the vast majority of documents requested by Smith were either: (1) not located in the ballot boxes or (2) not applicable because their counties used direct-recording electronic voting equipment.[4] Many of Smith's requests asked for documents applicable only in elections using optical mark reading equipment.[5] After hearing arguments, Judge Chaney sustained Webster's objections to the documents that were not located in the ballot box or that were inapplicable to the election. As to the items requested that were located in the ballot box, Judge Chaney determined that Smith's request did not comply with the specificity requirement that he previously had ordered. Smith's request sought "each" absentee ballot application and "each" absentee envelope rather than requesting the absentee ballots and envelopes of specific voters.

¶9. Later in the pretrial proceedings, Smith designated William Cooper and Talbot Brooks as "geocoding" experts.[6] In his declaration, Cooper claimed that his geocoding analysis

[4]"'Direct recording electronic voting equipment' means a computer driven unit for casting and counting votes on which an elector touches a video screen or a button adjacent to a video screen to cast his or her vote." Miss. Code Ann. § 23-15-531(b) (Rev. 2015).

[5]"'Optical mark reading equipment (OMR)' means any apparatus necessary to automatically examine and count votes as designated on paper ballots." Miss. Code Ann. § 23-15-303(b) (Rev. 2015).

[6]According to Cooper's declaration, "[g]eocoding is an automated geographic information system (GIS) software method that locates addresses by longitude and latitude. Once geographic points for a list of addresses are determined by the software, the address points can then be displayed as an overlay on a computer map with additional geographic

4

revealed that 1,385 registered voters in Coahoma and Quitman Counties were assigned to the wrong subdistrict.[7] Therefore, Smith alleged that nonresidents of subdistrict 11-3 were able to vote in the November 4 election, while many residents of the subdistrict were "left off of the pollbooks" and therefore unable to vote in the election. As shown in Smith's First Amended Petition, Smith asserted that 600 persons improperly cast their ballots in the election or were unable to vote in the election due to misassignment. On April 22, 2015, Webster filed a motion to disallow Smith's expert witnesses, arguing that the experts' findings were not relevant and/or not reliable.

¶10.   The trial judge granted Webster's motion. Judge Chaney found that Brooks had provided no "investigation, report or opinion relevant to th[e] election contest."[8] The special judge also found that Cooper's geocoding analysis was based solely on Excel files he received from Smith.[9] No certification from the circuit clerks, however, was provided to indicate that Cooper relied upon accurate data or maps in calculating his results. Therefore, Judge Chaney determined that Cooper's findings were not reliable.

---

layers."

[7]Of the 1,385 registered voters, 939 were from Coahoma County and 446 were from Quitman County. Cooper also noted that "because the Coahoma registered voter list [he] received contain[ed] only mailing addresses, there [were] about 3,250 P.O. Box addresses" that he could not geocode, which could increase the 939 total from Coahoma.

[8]The record is in fact void of any opinion given by Brooks. All the record contains concerning Brooks is a copy of his resume.

[9]Cooper's declaration states that "Mr. Turnage [who is Smith's lawyer] provided me with *Microsoft Excel* files of registered voters in both counties. It is my understanding that the *Excel* files were prepared by the offices of the Circuit Clerk in the respective counties. Both *Excel* files identified all voters by [Circuit Clerk] subdistrict."

¶11. On August 28, 2015, Webster filed a combined motion for summary judgment and memorandum of authorities. For purposes of summary judgment, Webster accepted as true Smith's assertion that 600 combined voters in Coahoma and Quitman Counties illegally voted in the election or were unable to vote in the election due to misassignment. Further, Webster also accepted as true that all 390 absentee ballots were invalid. Smith responded with a motion for partial summary judgment, a motion for declaratory judgment, a motion for reconsideration, and a response to Webster's motion for summary judgment. The trial judge held a hearing and ultimately granted Webster's motion for summary judgement.

¶12. The trial judge found that, even if he were to take Smith's assertions as true, Webster still would win the election. By subtracting 296 absentee votes from Webster, Webster would have had 2,959 votes. By subtracting 94 absentee votes from Smith, Smith would have had 2,275 votes. Thus, the difference between Smith and Webster without the absentee votes would have been 684 votes. Even assuming 600 persons unlawfully voted in the election or were unable to vote in the election and that all 600 would have voted for Smith, the special judge concluded that Webster still would have won by 84 votes.

¶13. The special judge also resolved Smith's request for declaratory judgment, finding that this Court already has determined that the judicial review process of election contests does not create a separation of powers issue. Lastly, in his order granting summary judgment, the special judge dismissed all other outstanding motions as moot. On October 16, 2015, Smith appealed. Smith raises six issues, recited verbatim as follows:

> 1. The Standard of Review For a Trial Court's Denial of Discovery Rights, the Exclusion of Expert Testimony and the Grant of Summary Judgment

2. Whether A Candidate For Public Office Has The Right To Make And Obtain Photocopies And/or Scan Of Election Materials and Documents Used To Conduct An Election Within The Twelve (12) Day Period Under Miss. Code Ann. 23-15-911 (1972)?

3. Whether The Provisions Of The Mississippi Supreme Court May 26, 1981 Order Adopting Rule 81(a)(4) But Leaving In Place Procedural Statutes Constitute Power Sharing In Violation Of The Separation of Powers Doctrine Or, Alternatively Determining That The Trial Court Committed An Abuse Of Discretion By Denying Smith's Discovery Rights Under The MRCP?

4. Whether The Trial Court's Exclusion of Smith's Experts By Order Filed May 20, 2015 Was An Abuse Of Discretion?

5. Whether The Trial Court Committed Reversible Error By Granting Summary Judgment To Webster In The Presence Of Genuine Issues Of Material Fact?

6. Whether The Trial Judge Abused Its Discretion By Not Ruling On Smith's Rule 54(b) Motion For Reconsideration?

## ANALYSIS

### I. The Standard of Review for a Trial Court's Denial of Discovery Rights, the Exclusion of Expert Testimony and the Grant of Summary Judgment

¶14. Because Smith's first issue is simply a statement of the standard of review for each issue presented, no discussion is necessary.

### II. Whether a candidate for public office has the right to make and obtain photocopies and/or scan of election materials and documents used to conduct an election within the twelve-day period under Mississippi Code Section 23-15-911.

¶15. As a matter of statutory construction, Smith asks this Court to declare that a candidate has a legal right under Section 23-15-911(1) to copy, scan, and photograph redacted and nonconfidential material used to conduct an election during a pre-suit, ballot-box examination. This Court reviews issues of statutory construction de novo. *Tunica County*

7

***v. Hampton Co. Nat'l Sur., LLC***, 27 So. 3d 1128, 1131 (Miss. 2009).

¶16.    In matters concerning statutory construction, "[t]he function of the Court is not to decide what a statute should provide, but to determine what it does provide." ***Lawson v. Honeywell Int'l, Inc.***, 75 So. 3d 1024, 1027 (Miss. 2011) (citing ***Russell v. State***, 231 Miss. 176, 94 So. 2d 916, 917 (1957)). We do not broaden or restrict legislative acts, but rather seek to "give effect to the intent of the Legislature." ***Id***. (citing ***City of Natchez, Miss. v. Sullivan***, 612 So. 2d 1087, 1089 (Miss. 1992)). When a statute is unambiguous, this Court simply applies the plain meaning of its words. ***Id***.

¶17.    Section 23-15-911(1) states, in pertinent part:

> . . . At any time within twelve (12) days after the canvass and examination of the box and its contents by the election commission or executive committee, as the case may be, *any candidate or his representative authorized in writing by him shall have the right of full examination of said box and its contents* upon three (3) days' notice of his application therefor served upon the opposing candidate or candidates, or upon any member of their family over the age of eighteen (18) years, which examination shall be conducted in the presence of the circuit clerk or his deputy who shall be charged with the duty to see that none of the contents of the box are removed from the presence of the clerk or in any way tampered with. Upon the completion of said examination the box shall be resealed with all its contents as theretofore.

Miss. Code Ann. § 23-15-911(1) (Rev. 2015) (emphasis added). Smith does not identify any particular language in the statute that grants a candidate the right to copy the contents of the ballot box. Rather, she simply asks this Court to hold that this statute contains such a right. Though the statute grants a candidate "the right of full examination of said box and its contents," it says nothing about whether ballot-box materials may be copied or scanned. *See id.*

8

¶18.   The Mississippi Attorney General has opined as follows:

> There is no doubt that a candidate who makes his request to examine the ballot boxes in a timely manner has a right to do so. However, *there is no statutory authority for a candidate to remove the ballots to copy or to bring a copy machine into the room where the ballots are kept to make copies of the ballots.*

*Hon. Valerie T. Smith*, Miss. Att'y Gen. Op. No. 97-0322, 1997 WL 370242 (June 13, 1997) (emphasis added); *see also Fritzie Toney Youngman, Esquire*, Miss. Att'y Gen. Op. No. 2001-0367, 2001 WL 797251 (June 22, 2001) (finding same). Attorney-general opinions are not binding on this Court but may be considered. *See **McAdams v. Perkins***, 204 So. 3d 1257, 1262 (Miss. 2016).

¶19.   Like these attorney-general opinions and the special judge, we find that Section 23-15-911(1) is unambiguous in that it does not create a right to copy or scan materials from the ballot box during a statutory examination. We find this argument without merit.

**III.    Whether the provisions of the Mississippi Supreme Court May 26, 1981, order adopting Rule 81(a)(4) but leaving in place procedural statutes constitute power sharing in violation of the separation-of-powers doctrine or, alternatively, determining that the trial court committed an abuse of discretion by denying Smith's discovery rights under the Mississippi Rules of Civil Procedure [sic].**

¶20.   Smith's third issue consists of two separate arguments. Both of these arguments center around her being unable to reexamine the contents of the ballot boxes after she filed her lawsuit, which Smith characterizes as a denial of discovery. First, Smith claims that Section 23-15-911(1) is a legislatively promulgated procedural statute which restricts the scope of discovery.

¶21.   From the outset, we disagree with Smith's assertion that Section 23-15-911(1) is a legislatively promulgated procedural rule in violation of Mississippi Constitution Article 1,

9

Section 2.[10] To the contrary, this Court has strictly upheld the statute's twelve-day time frame to view the contents of the ballot box. *See Cook v. Brown*, 909 So. 2d 1075, 1077 (Miss. 2005); *see also Weeks v. Bates*, 237 Miss. 778, 780, 115 So. 2d 298, 300 (1959)). In doing so, this Court has noted that "the time frame for viewing ballots *is a legislative function*, and this Court has no authority to modify the statutory limitation." *Cook*, 909 So. 2d 1077 (citing *Weeks*, 115 So. 2d at 300) (emphasis added). Simply put, Section 23-15-911(1) creates a substantive right to view the ballot-box contents for a limited time after an election is conducted. This right does not restrict any party's discovery rights under our rules of civil procedure.

¶22. Second, Smith argues that the trial judge abused his discretion by denying her Rule 34 motion to examine, inspect, and photocopy the contents of the ballot boxes. Because a general election contest had been filed when her motion was presented, Smith argues that she was authorized to copy the contents of the ballot boxes under Mississippi's discovery rules. She asserts that, instead of applying the rules to her request, the trial judge determined that Section 23-15-911(1) controlled the scope of discovery in this election contest.

¶23. Though the special judge stated that Rule 81 limits the application of the rules in an election contest, he still found that, if the rules did apply, Rule 34 did not govern Smith's

---

[10]No person or collection of persons, being one or belonging to one of these departments [the legislative, executive, or judicial], shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

Miss. Const. art. 1, § 2.

request. In the proceedings below, Smith sought to copy the contents of the ballot boxes pursuant to Rule 34. The scope of Rule 34, however, applies only to documents "within the possession, custody, or control *of the party upon whom the request is served*." *See* Miss. R. Civ. P. 34(a). Here, no request was served upon a party; rather, a motion was filed asking the special judge to enter an order allowing Smith to photocopy the documents in the ballot boxes. Even more, Rule 34 applies only to documents in the possession, custody, or control of another party. *See id.* The only other party to this case was Webster, and, of course, the ballot-box materials were not in his possession, custody, or control. Therefore, we agree with the special judge's finding that Rule 34 did not apply to Smith's request.

¶24. Additionally, Smith's argument fails to recognize that the special judge granted her fifteen days to request specific documents from the ballot box that she had found objectionable and wanted to copy. Regardless of how Smith characterizes her argument, Judge Chaney in fact granted her an opportunity to copy documents from the ballot boxes that she viewed during the twelve-day period in Section 23-15-911(1). However, Smith failed to comply with the special judge's order. Instead of requesting documents concerning specific voters as instructed, Smith asked to copy "each" absentee ballot and "each" absentee envelope. Further, most of the documents she requested were not even located in the ballot boxes.

¶25. As an aside, we also note that, for purposes of summary judgment, the trial judge agreed to throw out *all* of the absentee ballot votes that Smith sought to copy. Thus, this argument is, in essence, moot. Finally, we note that Smith was not denied discovery in this

matter under the Mississippi Rules of Civil Procedure. Smith conducted depositions of three circuit clerks, and the parties engaged in extensive written discovery. We find this issue to be without merit.

**IV.**    **Whether the trial court's exclusion of Smith's experts by order filed May 20, 2015, was an abuse of discretion.**

¶26.    For the reasons set forth in Issue V, we decline to address Smith's fourth issue.

**V.**    **Whether the trial court committed reversible error by granting summary judgment to Webster in the presence of genuine issues of material fact.**

¶27.    Next, Smith argues that the special judge erred by granting Webster's motion for summary judgment because questions of material fact existed for a jury to decide. Smith argues that by disqualifying (1) all 390 absentee votes, (2) all votes which she claims were illegally cast by voters who were nonresidents of subdistrict 11-3, and (3) giving her the benefit of all votes from subdistrict 11-3 residents who were "left off of the pollbooks," she puts enough votes in dispute to entitle her to a jury trial. Even throwing out all of these votes and taking into account the findings of Smith's disallowed expert, Smith does not overcome Webster's 886-vote margin.

¶28.    A trial judge's grant of summary judgment is reviewed de novo. *Moore v. Parker*, 962 So. 2d 558, 567 (Miss. 2007). "[T]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting Miss. R. Civ. P. 56(c)). "[A]n adverse party [to summary judgment] may not rest upon the mere allegations or denials of the pleadings, but instead the response

must set forth specific facts showing there is a genuine issue for trial." ***Bosarge v. LWC***

***Props, LLC***, 158 So. 3d 1137, 1142 (Miss. 2015). "If no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law, summary judgment should

be entered in that party's favor." ***Id***. (quoting ***Monsanto Co. v. Hall***, 912 So. 2d 134, 136

(Miss. 2005)).

*Absentee Ballots*

¶29. Regarding the absentee ballots cast in the subdistrict 11-3 election, Smith alleged that

most of the absentee-ballot envelopes and applications were in violation of mandatory

statutory provisions. In her discovery responses, Smith stated that:

> During petitioner's ballot box examinations in [Coahoma County], [Quitman County] and [Tunica County], a review revealed that a total of 390 absentee ballots were cast in [subdistrict] 11-3; petitioner received 94 total absentee votes; respondent received 296 absentee votes; respondent received 75.89% percent of the total absentee votes. *The absentee ballots have now been commingled and if irregularities are established to these absentee ballots, all absentee ballots must be thrown out.*

¶30. The trial judge accepted as true for purposes of summary judgment that *all* 390

absentee ballots were illegal. Thus, after throwing out 296 votes for Webster and 94 votes

for Smith, Webster's margin of victory dropped from 886 votes to 684 votes. *See **Fillingane**

**v. Breland**, 212 Miss. 423, 437, 54 So. 2d 747, 750 (1954) ("[Illegal ballots] require[] a

reduction of a contestee's vote . . . ."). Therefore, no genuine issue of material fact exists

concerning the absentee ballots in the subdistrict 11-3 election.

*Smith's Misassignment Theory*

¶31. To overcome Webster's winning margin, Smith also alleged that numerous votes from

Coahoma and Quitman Counties in the election came from misassigned and therefore illegal, nonresident voters of subdistricts 11-1 and 11-2. Further, Smith averred that numerous persons who in fact resided in subdistrict 11-3 were unable to vote in the general election because they had also been misassigned to the wrong subdistrict.

¶32.   Smith's theory of misassignment stems from the findings of her disallowed expert, Cooper. Based on his geocoding analysis, Cooper determined that approximately 1,385 registered voters were assigned to the incorrect subdistricts in Coahoma and Quitman Counties.[11] Smith took this number and concluded that 600 persons illegally voted or were unable to vote in the general election. In her amended petition, Smith alleged:

> 85. . . . a minimum combined total of 337 [Coahoma County] legal resident voters of SD 11-3 were denied their statutory and constitutional right under Mississippi law to vote and illegal non-resident voters of SD 11-1 and/or SD 11-2 in [Coahoma County] were misssigned to SD 11-3 and permitted to vote in the SD 11-3 CCJ election, according to the [Coahoma County] SEMS VR-009 Voter History Report and pollbooks provided on April 21, 2015.

> 86. In [Quitman County], in the November 4, 2014 CCJ SD 11-3 election, a minimum combined total of 263 legal resident voters of SD 11-3 were denied their right to vote under Mississippi law and illegal non-resident voters of SD 11-2 of [Quitman County] were permitted to vote in the SD 11-3 election.

(Emphasis in original.)

¶33.   Like Smith's argument concerning the absentee ballots, Smith placed before the special judge only allegations as to why 600 votes should be discarded—not facts. Smith incorrectly claims in her brief that "Mr. Cooper's declaration states that 600 persons who were allowed to vote in [subdistrict] 11-3 on November 4, 2014 [,] were illegally and

---

[11]Cooper did not note how many, if any, of the 1,385 registered voters actually voted in the November 4 election.

improperly mis-assigned to [subdistrict] 11-3, but are in fact residents of [subdistricts 11-1 and/or 11-2 in Coahoma and Quitman Counties]." The brief further claims that "Mr. Cooper's declaration attest [sic] to the fact that 337 non-resident voters in [Coahoma County] and 263 non-resident voters in [Quitman County] illegally voted in [subdistrict] 11-3[.]" Cooper's declaration, however, contains no such statements.

¶34. So, as shown, Smith's amended petition alleged that 600 voters from subdistrict 11-1 and 11-2 illegally voted in the election. Her petition did not, however, specify how many voters from subdistrict 11-3 were improperly assigned to the incorrect subdistrict and therefore "left off of the pollbooks." But, when responding to Webster's Third Set of Interrogatories during discovery, Smith stated the following with regard to Coahoma County:

> I contend that the *combined total* of legal resident voters of SD 11-3 of Coahoma County, Mississippi (CCM) who were denied the right to vote in the November 4, 2014 circuit court judge election by being misassigned to SD 11-1 or 11-2 *and* the illegal non-resident voters of SD-11-3 and permitted to vote in the SD 11-3 election *total 337 to date*. My investigation continues and this answer will be supplemented.[12]

(Emphasis added.) With regard to Quitman County, Smith answered:

> In Quitman County, Mississippi (QCM), I contend that a *combined total* of legal resident voters of SD 11-3 who were denied the right to vote in the November 4, 2014 circuit court judge election *and* illegal non-resident voters of SD 11-2 of QCM who were permitted to vote in the SD 11-3 election total 263.

(Emphasis added.) Based on Smith's sworn responses, it is clear that Smith's 600-voter total includes all persons who she claims were unable to vote in subdistrict 11-3 *and* those who she claims unlawfully voted in the subdistrict 11-3 election.

---

[12]There is no indication in the record that the total of 337 was ever supplemented.

¶35.   For purposes of summary judgment, Webster and the trial judge took these allegations as true and gave Smith the benefit of all 600 votes. Even with the benefit of these 600 votes, however, Webster still won the election by 84 votes. Smith stated her theory of overcoming Webster's margin of victory in a response to an interrogatory:

> If the *390 absentee ballots* cast are determined to be illegal votes due to statutory defects and are thrown out coupled with the *337 misassigned and illegal votes cast in CCM and the 263 misassigned and illegal votes cast in QCM*, the 886 winning margin shown in the certified returns *is overcome by the 990 misasigned [sic] and illegal votes case [sic]* and the election results thereof do not conform to the will of the voters and uncertainty has been cast upon the results.

(Emphasis added.) Smith's theory, however, erroneously added the 390 absentee ballots to the 600 misassigned voters rather than subtracting the number of absentee votes each candidate received. Therefore, even taking all of Smith's allegations as true, no genuine issue of material fact exists as to which candidate received the greatest number of legal votes in the subdistrict 11-3 election.[13]

## VI.   Whether the trial judge abused his discretion by not ruling on Smith's Rule 54(b) motion for reconsideration.

¶36.   Lastly, Smith argues that the special judge failed to rule on a pending motion to reconsider four of his prior orders and therefore abused his discretion. We disagree. Paragraph 14 of the judge's order granting summary judgment states:

> Because of the court's ruling on this dispositve motion, all other outstanding motions are dismissed as moot.

---

[13]Smith's brief centers solely around the exclusion of Cooper's findings and presents no argument as to why it was error to exclude Brooks, other than a summary statement claiming such. We find any argument asserting that the trial judge erred by disallowing Brooks to be waived. *See **Morgan v. City of Ruleville***, 627 So. 2d 275, 279-80 (Miss. 1993).

¶37. So, instead of entering a separate order disposing of Smith's motion to reconsider, the special judge summarily disposed of all outstanding motions, including Smith's Rule 54(b) motion. No error occurred here.

## CONCLUSION

¶38. For the above reasons, we affirm the judgment granting summary judgment in favor of Webster.

¶39. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**