977 So.2d 1252 (2008)
Shawn Gavin O'NEAL, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00788-COA.
Court of Appeals of Mississippi.
March 25, 2008.
*1253 Brenda Jackson Patterson, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court:
¶ 1. Shawn Gavin O'Neal was convicted of aggravated domestic violence, pursuant to Mississippi Code Annotated section 97-3-7(4) (Rev.2006). He was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with eight years to serve, twelve years suspended pursuant to five years of post-release supervision. O'Neal was also ordered to pay a fine of $2,000. As error on appeal, O'Neal argues that: (1) the trial court allowed a key witness to testify about a necklace and admitted it into evidence when the necklace was not furnished to the defense until the trial and (2) the trial court allowed Dr. Rocco Barbieri to testify as to causation of the injury even though the State did not qualify him as an expert witness. Finding no reversible error, we affirm.

FACTS
¶ 2. O'Neal and Mary Landry were involved in a romantic relationship and lived together in the same household along with Landry's teenage son, Nicholas. On Sunday, August 20, 2004, the three were having a cookout at their home with Landry's adult nephew, his wife, and their small child. Nicholas was the last to leave the house to visit a friend, which left O'Neal and Landry alone together.
¶ 3. Landry testified that she was afraid of being alone with O'Neal, so she decided to leave. As she was pulling her car out of the garage, O'Neal reached into the car to pull the' keys out of the ignition. He grabbed her hair and pulled her out of the Car. As she resisted, he kicked her in the leg with his steel-toed boots and stomped on her back and side before she passed out from, the pain. Landry sustained a broken femur from the alleged assault.
¶ 4. As the paramedics were attending to Landry, O'Neal told an investigator from the sheriffs department that he was trying to keep Landry from driving while intoxicated. He said that while he was trying to get her out of the car, their dog got in the way, and he tried to kick the dog, but he kicked Landry instead.
¶ 5. Nicholas testified that O'Neal told him two different versions of what happened. First, O'Neal called Nicholas to tell him to come home because his mother had tripped over the dog and injured her leg. Then, after Nicholas arrived at the house, O'Neal told him that, as Landry was trying to get out of the car, the dog got in her way, and O'Neal tried to kick the dog; but he missed and kicked Landry.
¶ 6. Nicholas further testified that he found a necklace that he had given to his mother for Mother's Day. The necklace was broken into pieces on the garage floor with a lock of hair stuck to it. He did not turn the necklace over to the police or mention finding it. Nicholas kept it until he delivered it to the district attorney just days before the trial began.
¶ 7. Dr. Barbieri, the orthopedic surgeon who repaired Landry's broken femur, testified at trial. He stated that the type of break that Landry sustained was usually *1254 the result of a high-energy force like a fall from a great height or a car accident, not the result of a simple fall.
¶ 8. O'Neal testified that he was not wearing steel-toed boots and that he did not own a pair. He stated that the dog ran in between him and Landry, as he was helping her out of the car. He lost his balance, and they both fell over, causing Landry's left femur to break.

ANALYSIS
1. Whether the trial court erred by allowing a key witness to testify about a necklace and admitting it into evidence when the necklace was not furnished to the defense until the trial.
¶ 9. O'Neal argues that the trial court erred when it allowed Nicholas to testify about the necklace he found in the garage on the day his mother was injured. O'Neal did not know about the necklace until the morning of trial, which was almost three years after the alleged assault. Thus, O'Neal claims that he was severely prejudiced by the testimony. The State responds that this discovery violation was waived when counsel for O'Neal did not request time to interview the witness or move for a continuance.
¶ 10. The standard of review for the trial court's ruling on a discovery violation is abuse of discretion. Montgomery v. State, 891 So.2d 179, 181(¶ 6) (Miss.2004). The procedure for the trial court to follow regarding a discovery violation is governed by Rule 9.04(1) of the Uniform Rules of Circuit and County Court Practice, which states:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs, or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or a mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
¶ 11. At trial, the State called Nicholas to testify about the necklace. Defense counsel objected on the grounds that they did not know about the necklace until that morning. The State claimed to have received the necklace only days before and to have shown it to defense counsel that morning. The judge allowed the necklace to be entered into evidence and allowed defense counsel to cross-examine Nicholas regarding the necklace. Nicholas testified that he found the broken necklace on the day of the alleged assault, but he did not turn it over to the police. The necklace was not mentioned in his statement, and he first furnished the necklace to the district attorney on the Friday before trial began on the following Tuesday. After cross-examination, defense counsel again objected to the necklace being entered into evidence. The trial court overruled the objection. Thereafter, defense counsel did not request any extra time to examine the *1255 necklace and did not request a continuance.
¶ 12. O'Neal claims that it was reversible error for the trial court to allow the necklace to be introduced into evidence; however, the supreme court has "repeatedly held an accused's remedy for tardy disclosure of that to which he was entitled in pre-trial discovery is a continuance reasonable under the circumstances." Middlebrook v. State, 555 So.2d 1009, 1011 (Miss. 1990). Further, the court has "held equally often that the accused's right to a continuance is not self-executing and that he must affirmatively request it on pain of waiver." Id. Counsel for O'Neal chose to allow the trial to continue and did not make any such request for a continuance, thereby waiving any remedy for the State's discovery violation. Because O'Neal waived his right to a claim for relief, we find that this issue has no merit.
¶ 13. Notwithstanding the procedural bar, we further note that "[w]here the discovery violation results in the admission of evidence that is merely cumulative, the error is harmless." Prewitt v. State, 755 So.2d 537, 541(¶ 11) (Miss.Ct. App.1999). Here, testimony about the broken necklace was cumulative evidence of Landry's testimony that she was violently removed from the car by her hair and thrown onto the garage floor by O'Neal. Thus, any error created by the admission of the necklace was harmless in nature.
2. Whether the trial court erred by allowing Dr. Barbieri to testify as to the causation of Landry's injury even though the State did not qualify him as an expert witness.
¶ 14. O'Neal also argues that the trial court committed reversible error by allowing Dr. Barbieri to testify as to the causation of Landry's injury despite the fact that he was called as a lay witness and not as an expert witness. The State contends that if any error by the trial court occurred regarding this issue, it was harmless error.
¶ 15. O'Neal states that Dr. Barbieri's testimony was based on his training and experience as an orthopedic surgeon; thus, Dr. Barbieri should have been classified as an expert witness subject to the requirements in Rule 702 of the Mississippi Rules of Evidence and the discovery requirements of Rule 9.04(A)(4) of the Uniform Rules of Circuit and County Court Practice. During direct examination, the State first asked Dr. Barbieri whether Landry's injury was consistent with a fall. Counsel for O'Neal objected because the question pertained to causation, and the trial court sustained the objection. However, the trial court allowed Dr. Barbieri to testify as to what type of force was necessary to cause this type of fracture. The trial court overruled O'Neal's objection based on the fact that Dr. Barbieri examined the fracture himself. Dr. Barbieri testified as follows:
Q: Okay. What type of force would be necessary to cause this type of fracture?
A: Usually a high-energy force.
Q: High-energy force?
A: High-energy force. A fall from a height or usually a car wreck. It's not something you usually see every day from a simple fall.
¶ 16. We review the trial court's decision on the admissibility of evidence under an abuse of discretion standard. Wade v. State, 583 So.2d 965, 967 (Miss.1991). Rule 701 of the Mississippi Rules of Evidence governs opinion testimony by a lay witness, and it provides that such testimony is: *1256 limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of his testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
M.R.E. 701.
¶ 17. The supreme court has held that it is possible for an expert in an area of knowledge to give a lay opinion, but not if the witness is operating in his professional capacity. Miss. State Hwy. Comm'n v. Gilich, 609 So.2d 367, 377 (Miss. 1992). "[W]here a witness is to give testimony derived from specialized knowledge gained by education or experience, the testimony is not lay opinion testimony." Id. In Sample v. State, 643 So.2d 524, 530 (Miss.1994), the supreme court stressed the importance that we not blur the line between Rules 701 and 702 so that the responding party has sufficient notice and an opportunity to prepare a rebuttal.
¶ 18. Here, it is clear that Dr. Barbieri, as the orthopedic surgeon who performed Landry's surgery, was qualified to testify as an expert. Dr. Barbieri was acting in his professional capacity when he testified that the type of fracture Landry experienced was caused by a high-energy force as opposed to a simple fall. Clearly, Dr. Barbieri should have been qualified as an expert witness under Rule 702; therefore, O'Neal would have been allowed discovery in order to test Dr. Barbieri's qualifications before his testimony was presented to the jury. See Sample, 643 So.2d at 530.
¶ 19. The State contends that this error committed by the trial court was harmless error as it did not affect a substantial right of O'Neal. Rule 103(a) of the Mississippi Rules of Evidence states that error based upon rulings of evidence "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ." To warrant reversal, the error by the trial court must have "the effect of denying the defendant a fundamentally fair trial." Martin v. State, 726 So.2d 1210, 1214(¶ 13) (Miss.Ct.App. 1998).
¶ 20. Dr. Barbieri's testimony regarding the causes of this type of fracture did not deny O'Neal his right to a fundamentally fair trial. Even without Dr. Barbieri's testimony as to causation, there was sufficient evidence submitted to the jury to establish the crime of aggravated domestic violence. Landry testified that O'Neal forced her out of her car, threw her down on the garage floor, and kicked and stomped on her leg and back. Photographs that show the bruises on her body, which were consistent with her testimony, were admitted into evidence. The officer who arrived on the scene testified that Landry was in a great deal of pain from the injury, and Dr. Barbieri testified without objection, that Landry's broken femur was a serious injury. The trial court erred in allowing Dr. Barbieri's testimony as to the cause of Landry's injury because Dr. Barbieri was not offered as an expert witness. However, such error did not have the affect of denying O'Neal a substantial right or rendering his trial fundamentally unfair. Consequently, this error does not warrant reversal.
¶ 21. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT, DOMESTIC VIOLENCE, AND SENTENCE TO SERVE TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWELVE YEARS SUSPENDED, WITH FIVE YEARS ON POST-RELEASE SUPERVISION, *1257 AND FINE OF $2,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ.