# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00927-COA

**MICHAEL D. JACKSON A/K/A MICHAEL JACKSON**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT:      05/25/2018
TRIAL JUDGE:      HON. LEE SORRELS COLEMAN
COURT FROM WHICH APPEALED:      LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      CHRISTOPHER E. KITCHENS
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
      BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:      SCOTT WINSTON COLOM
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:      AFFIRMED - 01/07/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Following a jury trial, Michael Jackson was found guilty of exploitation of a minor. The circuit court sentenced Jackson to a term of twelve years in the custody of the Mississippi Department of Corrections, with five years suspended and seven years to serve. Jackson appealed, arguing the circuit court erred in (1) failing to provide him a probable cause hearing under Mississippi Code Annotated section 99-3-28(1)(a) (Rev. 2007); (2) failing to suppress his confession; (3) failing to suppress evidence obtained from his home; (4) limiting his theory of defense; (5) refusing his proposed jury instructions; (6) allowing witness testimony that violated the rules of discovery; and (7) refusing to grant his motion

for a new trial. Finding no error, we affirm the circuit court's judgment.

**FACTS**

¶2. In 2013, Jackson was a music teacher and choir director at Columbus High School in Columbus, Mississippi. K.B.[1] attended Columbus High School but was not one of Jackson's students. On November 22, 2013, Jackson messaged K.B. on "Kik," an instant messaging application ("app") for mobile devices. When K.B. asked, "who might this be," Jackson responded, "an admirer . . . I'm afraid to say [because] I'm older than [you and] I work at CHS . . . ." K.B. tried guessing, and Jackson messaged, "Before I proceed I have to tell [you] I'm a guy [and] I don't know if you would [be] cool with that." K.B. replied, "as long as you don't try or harass me we cool."

¶3. A few days later, Jackson asked K.B. for his cell phone number, and they began text messaging. Jackson asked K.B. detailed questions about his sex life and the size of his penis. Jackson asked K.B. how "big" he was and suggested K.B. should get paid to receive oral sex. Jackson then messaged, "[T]hat could be very lucrative for [you] . . . [why] not get paid to get what [you] already getting . . . ." K.B. responded, "[I don't know] money talks though."

¶4. Jackson offered K.B. $50 to give K.B. oral sex. K.B. said that was too cheap. Jackson then offered $100, and K.B. replied, "I [was] looking forward to a Salvatore Ferragamo belt." Jackson then offered $275. K.B. agreed.

¶5. They went back and forth on meeting times. On December 7, 2013, they attempted

---

[1] We use initials to protect the minor's identity.

to meet in a gas station bathroom, but Jackson backed out upon arrival, claiming there was too much activity at the gas station. He was also worried about the cameras on the outside of the gas station. Jackson asked K.B. to follow him to his house, but K.B. said he could not because his mother called and needed a ride.

¶6. K.B.'s last message to Jackson was on December 16, 2013. He said the hall "was talking," implying that other students knew about what was going on between them. At the end of January, K.B. told his mother about the messages. On January 31, 2014, they went to the police station and met with Investigator Tabertha Hardin. K.B. told Investigator Hardin about the messages between himself and Jackson and showed her the messages on his phone. Jackson was arrested two days later. Investigator Hardin prepared a search warrant for Jackson's home and cell phone, which the police seized the following day. The police also seized two computers, four phones, two tablets, three hard drives, and three jump drives. A forensic analysis of Jackson's phone showed the text messages between Jackson and K.B., including some deleted messages.[2]

¶7. On February 3, 2014, around 12 p.m., Investigator Timothy Jenkins met with Jackson. Jackson immediately requested a lawyer. Investigator Jenkins read Jackson his *Miranda*[3] rights, and Jackson signed a waiver. At that point, the interrogation ceased, and Investigator Jenkins left.

---

[2] The initial forensic analysis did not reveal any text messages between Jackson and K.B. Later, with advanced technology, the messages were recovered.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

¶8.    A few hours later, it is undisputed that Jackson requested to speak again with Investigator Jenkins.  The following exchange occurred:

Inv. Jenkins: You requested to speak to me, is that right?

Jackson:    Uh huh.

Inv. Jenkins: Again, I'm Investigator Jenkins, that's Investigator McCrary. Before we get started talking, earlier today when we started the interview, I read your rights to you correct?

Jackson:    Uh huh.

Inv. Jenkins: I need a yes or no . . .

Jackson:    Yes.

Inv. Jenkins: And at that time, you requested to speak with a lawyer, is that correct?

Jackson:    Yes.

Inv. Jenkins: Now, you are willing to waive that right and speak to me again?

Jackson:    I want to tell you about the situation.

Inv. Jenkins: Look, before that, I can't listen to anything like that, you see what I'm saying, to cover myself.

Jackson:    Okay.

Inv. Jenkins: I need to read you your [rights] again and if you want to talk to me after that, we can do that okay[?]

Jackson:    **Okay. I would just rather wait until I consult with a lawyer.**

Inv. Jenkins: Okay, that's fine. Um since we are in here, I do have to read your rights again, and then we will go through the whole you want to speak to a lawyer, okay?

4

Jackson:         Okay.

Inv. Jenkins:    I understand what you want to talk to me about but like I said to cover me, cover the department and the city, I have to go through the steps; do you know what I mean?

Jackson:         Yes sir.

. . . .

Inv. Jenkins:    Like I said, we can talk about what you want to talk about, that's fine, but I have to go through all this.

Jackson:         Okay.

. . . .

Inv. Jenkins:    Okay. We are at the Columbus Police Department. Today's date is Monday, February 3rd. The time now is 3:23 p.m. Alright, just like before . . . (Read rights) Do you understand these rights?

Jackson:         Yes.

Inv. Jenkins:    (Read waiver of rights) Now, do you want to talk to me about what you requested to talk to me about?

Jackson:         Yes.

Inv. Jenkins:    If you would, sign right there. Officer McCrary is going to step out so you and I can talk okay?

Jackson:         Okay.

Inv. Jenkins:    You understand what you have been charged with, right?

Jackson:         Yes sir.

Inv. Jenkins:    You requested to speak with me, is that right?

Jackson:     Yes sir.

Inv. Jenkins:  Okay, what would you like to talk to me about?

(Emphasis added). Jackson signed a second *Miranda* waiver and confessed to offering K.B. $275 to receive oral sex from him.

¶9.     Jackson was indicted pursuant to Mississippi Code Annotated section 97-5-33(6) (Supp. 2013). On April 29, 2015, Jackson filed a motion to suppress, claiming that he was denied a probable cause hearing under Mississippi Code Annotated section 99-3-28(1)(a). As a result, he requested that any statements given to the Columbus Police Department and any evidence seized in connection with those statements be suppressed.

¶10.    The circuit court subsequently held a hearing on the motion to suppress and heard testimony from Jackson and Investigators Hardin and Jenkins.[4] Jackson testified that he asked to speak with Investigator Jenkins a second time because he "just really wanted to find out what was going on." At the close of the hearing, the circuit court continued the hearing and requested that the parties provide briefing on the motion to suppress—specifically, whether or not the probable cause hearing of section 99-3-28(1)(a) was applicable. Both parties complied and presented their arguments at the second hearing. The circuit court ultimately held that the mere fact that the student knew Jackson and that Jackson was a

---

[4] On January 20, 2015, Jackson filed a motion to quash the indictment, arguing that it was "unconstitutionally over broad." The circuit court also heard this motion at the hearing and ultimately denied the motion. The constitutionality of the indictment was not raised as an issue on appeal.

teacher at his school did not invoke the use of section 99-3-28(1)(a). At no point in the motion to suppress or during the hearing did Jackson's attorney allege the statement should be suppressed due to a violation of his invocation to an attorney. Jackson's argument stemmed solely from the alleged statutorily-required probable cause hearing.

¶11. The case was tried on May 21 through May 25, 2018. At trial, the jury heard testimony from K.B. He testified that he first met Jackson leaving school early one day. K.B. stated that Jackson asked him his name and age. The two later crossed paths again when K.B. was in the school play. K.B. was waiting for his ride after rehearsal, and Jackson asked him about his behavior at school and what kind of student he was. Their next interaction was through the "Kik" app on November 22, 2013. K.B. testified in detail to the instant messages and text messages between himself and Jackson, stating that Jackson offered him up to $275 to receive oral sex.

¶12. Investigator Jenkins testified that he initially read Jackson his *Miranda* rights and handed him a waiver form. He also testified that he goes through the waiver form with every detainee even if he or she has requested a lawyer. After Jackson invoked his right to an attorney, Investigator Jenkins wrote "requested lawyer" at the bottom of the form, had Jackson sign it, and left. He stated that Jackson asked to speak to him three and a half hours later, so he went back into the room where Jackson was being held. He testified that he provided Jackson with a second waiver form. The video of the second interview between Investigator Jenkins and Jackson was played for the jury. The defense did not object when

7

the video was offered into evidence or when the video was played for the jury. The defense only objected after the jury watched the entire video.[5]

¶13. Sedrick Fenster also testified for the State. Fenster, a bail bondsmen, testified he had been friends with Jackson since the early 2000s. Over the years, Fenster was the sound technician for Jackson's school concerts and plays. He stated that in February 2014 he had been trying to call Jackson because he knew Jackson had an event happening soon. When Jackson finally called him back, he asked Fenster if he knew he had been arrested. Fenster said, "[N]o," and Jackson asked him to come over to his house. Fenster testified that, after he arrived at Jackson's home, Jackson admitted he had offered money to a student to receive oral sex.

¶14. The defense called Investigator Hardin as its only witness. She testified that K.B. and his mother came to the police department to report an incident where K.B. was getting messages from a teacher at Columbus High School. Investigator Hardin then testified that she took screen shots of K.B.'s messages on his phone and then sent those screen shots to her computer.

¶15. At the close of Investigator Hardin's testimony, the defense rested. The jury found Jackson guilty of exploitation of a minor. Jackson appeals.

**ANALYSIS**

---

[5] The actual objection and its analysis will be addressed fully in part two of this opinion's analysis section.

### 1. Mississippi Code Annotated section 99-3-28 does not apply.

¶16. Jackson claims he was entitled to a probable cause hearing as a licensed public school teacher under section 99-3-28(1)(a). We review issues of statutory construction de novo. *Smith v. Webster*, 233 So. 3d 242, 247 (¶15) (Miss. 2017). "In matters concerning statutory construction, 'the function of the Court is not to decide what a statute should provide, but to determine what it does provide.'" *Id*. at (¶16) (quoting *Lawson v. Honeywell Int'l Inc*., 75 So. 3d 1024, 1027 (¶7) (Miss. 2011). "When a statute is unambiguous, [we apply] the plain meaning of its words." *Id*.

¶17. Section 99-3-28(1)(a) provides, in relevant part:

> Except as provided in subsection (2) of this section, before an arrest warrant shall be issued against any teacher who is a licensed public school employee as defined in Section 37-9-1 . . . for a criminal act, whether misdemeanor or felony, which is alleged to have occurred **while the teacher . . . was in the performance of official duties**, a probable cause hearing shall be held before a circuit court judge.

(Emphasis added).

¶18. The plain language of the statute mandates a probable cause hearing before an arrest warrant is issued against a licensed public school teacher if engaged in a criminal act while in the performance of his official duties. K.B. was not Jackson's student. Jackson happened to work at the same school K.B. attended. Jackson never taught K.B. Jackson never supervised K.B. In fact, all of the alleged criminal activities by Jackson against K.B. occurred off campus, outside of school hours. Consequently, Jackson cannot avail himself of the procedures provided in this section.

**2.  The circuit court properly admitted Jackson's confession.**

¶19.   Jackson argues that the circuit court erred in refusing to suppress his confession because he had invoked his right to counsel. "Whether a confession is admissible is a fact-finding function for the trial court, and its decision will not be overturned unless the trial court applied an incorrect legal standard, committed manifest error, or made a decision against the overwhelming weight of the evidence." *Haynes v. State*, 934 So. 2d 983, 988 (¶15) (Miss. 2006).

¶20.   Jackson first argued for the suppression of the confession in his motion to suppress. However, as previously mentioned, Jackson did not argue a violation of his Fifth Amendment rights.[6] He instead argued that any confession obtained should be suppressed because he was denied a probable cause hearing.  That issue was addressed in the first motions hearing.  The court continued the hearing and reserved its ruling until the issue was briefed.  During the second motions hearing, Jackson's attorney argued that the confession should have been suppressed because he did not receive an initial appearance within a reasonable time.  The court denied the motion to suppress.  At trial, without further objections, Investigator Jenkins testified, and the jury viewed the interview in question.  After the confession was played for the jury, Jackson objected, claiming the confession was obtained in violation of his Fifth Amendment rights.

¶21.   An objection to evidence "must be made as soon as it appears that the evidence is

_____

[6] U.S. Const. amend. V.

10

objectionable, or as soon as it could reasonably have been known to the objecting party . . . ." *McGuire v. State*, 170 So. 3d 570, 576 (¶14) (Miss. Ct. App. 2014) (quoting *Sumner v. State*, 316 So. 2d 926, 927 (Miss. 1975)). Here, Jackson had access to the video and transcript years before trial.[7] As previously stated, Jackson never raised this issue in his motion to suppress and never made any arguments on the issue at either hearing on that motion. Further, at trial, when Investigator Jenkins was asked to testify and the video transcript was offered into evidence, Jackson again made no objection. The day after the entire video was played for the jury, defense counsel objected, stating, "[W]hen I watched the video yesterday, I noticed [for the first time] very clearly in the statement where they were talking to him, [that Jackson] invoked his Fifth Amendment right." This was done after the evidence was introduced and played to the jury. Further, this objection was made after the filing of a written motion to suppress and the two hearings thereon, none of which raised this issue. Consequently, we find Jackson waived his argument of a Fifth Amendment violation and did not preserve this issue for appeal.

¶22. Waiver notwithstanding, the circuit court did not err in admitting Jackson's confession. Jackson invoked his right to counsel during the first interview. When a suspect invokes his right to counsel, all custodial interrogation must cease until the lawyer is present,

---

[7] Defense counsel filed a motion for discovery on August 22, 2014. The defense then provided a notice of reciprocal discovery to the State on May 18, 2015. Although the record does not reveal the exact date Jackson received discovery from the State, it is obvious he received it before he provided reciprocal discovery.

unless the suspect himself "initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).[8] The first interrogation did cease. It is undisputed Jackson initiated further communication with Investigator Jenkins, prompting the second interview. At the beginning of the second interview, the following exchange occurred:

> Jackson: I want to tell you about the situation.
>
> Inv. Jenkins: Look, before that, I can't listen to anything like that, you see what I'm saying, to cover myself.
>
> Jackson: Okay.
>
> Inv. Jenkins: I need to read you your [rights] again and if you want to talk to me after that, we can do that okay[?]
>
> Jackson: Okay. I would just rather wait until I consult with a lawyer.
>
> Inv. Jenkins: Okay, that's fine. Um since we are in here, I do have to read your rights again, and then we will go through the whole you want to speak to a lawyer, okay?

Investigator Jenkins read Jackson his *Miranda* rights, and Jackson signed a second waiver form. The two began talking, and Jackson ultimately confessed.

¶23. First, we must determine whether Jackson invoked his right to counsel. *See Holland v. State*, 587 So. 2d 848, 855 (Miss. 1991). "Due to the fact-specific nature of requests for

---

[8] The Fifth Amendment right to counsel, as incorporated to apply to the states, attaches during custodial interrogations. *See Collins v. State*, 172 So. 3d 724, 736 (¶9) (Miss. 2015), *distinguished on other grounds by Manning v. State*, 269 So. 3d 216, 220 (¶16) (Miss. Ct. App. 2018).

counsel and *Miranda* waivers, the applicable law has become muddled. Accordingly, we review such requests on a case-by-case basis." *Downey v. State*, 144 So. 3d 146, 150 (¶7) (Miss. 2014).

¶24. A person does not have to use specific language such as "I want a lawyer" in order to invoke the right to counsel. *Montoya v. Collins*, 955 F.2d 279, 283 (5th Cir.1992). Only "some kind of positive statement or other action that informs a reasonable person of the defendant's 'desire to deal with the police only through counsel'" is required to assert the right. *Wilcher v. State*, 697 So. 2d 1087, 1096 (Miss. 1997) (quoting *Montoya*, 955 F. 2d at 283 (quoting *Michigan v. Jackson*, 475 U.S. 625, 626 (1986), *overruled on other grounds by Montejoy v. Louisiana*, 556 U.S. 778,780-81, 797 (2009))).[9]

¶25. "When there is ambiguity in the request for counsel, this Court applies a three-step test to determine whether the trial judge correctly decided whether to admit or suppress a defendant's statements to a law enforcement officer." *Downey*, 144 So. 3d at 151 (¶18) (citing *Holland*, 587 So. 2d 848). "In applying this test, we consider (1) whether counsel was ambiguously requested; (2) if the request for counsel was ambiguous, whether the appropriate questions to identify the counsel requested were asked; and (3) if the

---

[9] The Mississippi Supreme Court has said that "an ambiguous mention of possibly speaking to one's attorney is insufficient to trigger the right to counsel." *Grayson v. State*, 806 So. 2d 241, 247 (¶11) (Miss. 2001) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). A mere suggestion or misunderstanding is not enough. *See id.* "A suspect must articulate his or her desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney." *Delashmit v. State*, 991 So. 2d 1215, 1220 (¶14) (Miss. 2008).

13

interrogation continued without counsel, whether there was a valid *Miranda* waiver." *Id.*

¶26.    We recognize that this case presents a unique set of facts.  Jackson initially invoked his right to counsel, but several hours later he initiated further communication.  After Investigator Jenkins returned, Jackson said he wanted to talk about the "situation." Investigator Jenkins attempted to re-read Jackson his *Miranda* rights, and Jackson stated he would rather wait to consult a lawyer.  Those two statements are conspicuously in conflict with each other.  Further, those two statements came after Jackson requested and initiated the new contact with law enforcement.  It would be an understatement of perplexing proportions to assert the officers were not confused and unclear as to whether he wanted to talk or not.  Investigator Jenkins then retreated to the safe harbor of reading the *Miranda* rights to see if the confusion could be cleared.  After Jackson was read his rights, he agreed to speak with law enforcement.

¶27.    A law enforcement officer cannot question the accused[10] about his criminal conduct after he invokes his right to counsel.  *Kirkland v. State*, 559 So. 2d 1046, 1047 (Miss. 1990). However, the officer is permitted to inquire about counsel for clarification purposes. *Kuykendall v. State*, 585 So. 2d 773, 777 (Miss. 1991); *see also Holland*, 587 So. 2d at 858 (holding the interrogator's line of questioning must not exceed the limits of permissible clarification).  After Jackson stated he would rather wait to consult a lawyer, Investigator

---

[10] *See* U.S. Const. amend. VI; Miss. Const. art. 3, §26; *Page v. State*, 495 So. 2d 436, 439 (Miss. 1986).

14

Jenkins was permitted to seek clarification. Investigator Jenkins did not question Jackson about his criminal conduct. He only stated that he needed to re-read Jackson his *Miranda* rights before listening to anything Jackson had to say about the "situation." He also informed Jackson that they could talk about whether Jackson wanted a lawyer after he was read his *Miranda* rights. At that point, Jackson was read his *Miranda* rights for a second time and signed a second waiver form. Investigator Jenkins then asked Jackson what he wanted to talk about, and Jackson told Investigator Jenkins what he obviously wanted to say.

¶28. After applying the three-step test set forth in *Holland*, we find the circuit court properly admitted Jackson's confession. Jackson initiated further communication with Investigator Jenkins and then stated he wanted a lawyer. Confused because Jackson had requested to speak with him a second time to talk about "the situation," Investigator Jenkins sought to clarify Jackson's request by reading him his *Miranda* rights. After Jackson was read his rights, Jackson voluntarily waived his rights and spoke to Investigator Jenkins.

¶29. As stated previously, Jackson did not object as to the invocation issue until *after* the confession was played in its entirety to the jury. The separate opinion does not address the waiver issue. Rather, the separate opinion argues that our holding that Investigator Jenkins' permissive clarification "erode[s] constitutional principles" concerning the invocation of the right to counsel.

¶30. The ruling in this case is directly determined by the unique facts of this case. Jackson invoked his rights in the first interview. The detectives respected that invocation and left.

15

A few hours later, Jackson clearly reinitiated contact with the detectives. When the detective re-entered the room, Jackson affirmed that he had asked the detectives to return. He then told the detective, "I want to tell you about the situation." Then, almost immediately after making that statement, Jackson stated, "I would just rather wait until I consult with a lawyer." This statement was different from his previous statements asking the detectives to return and to "tell [them] about the situation." Simply put, Jackson's conflicting statements made within seconds of each other, coupled with the fact that he had reinitiated the entire second conversation, created a confusing and ambiguous situation. Investigator Jenkins responded by reading Jackson his *Miranda* rights again. After the *Miranda* warnings were read, Jackson waived his rights and began speaking with the detectives. We find Investigator Jenkins's attempt to clarify the situation by reading Jackson his constitutionally required *Miranda* rights was not a violation of Jackson's Fifth Amendment rights. *See Kuykendall*, 585 So. 2d at 777; *see also Holland*, 587 So. 2d at 858.

¶31.   Further, even if the circuit court had erred in admitting Jackson's confession, the error would be harmless.

> [T]he admission of statements taken in violation of an accused's Fifth Amendment rights is "amenable to harmless error analysis." "In order for a violation of a constitutional right to be held harmless, this Court must determine that the violation was harmless beyond a reasonable doubt." We have held that "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming."

*Hutto v. State*, 227 So. 3d 963, 980 (¶49) (Miss. 2017) (citations omitted).

16

¶32. Here, the weight of evidence against Jackson is overwhelming without his confession. K.B. testified that Jackson offered him $275 to receive oral sex from him. The text messages between Jackson and K.B. corroborating that offer were admitted into evidence before the jury. Finally, Fenster, Jackson's longtime friend, testified that Jackson admitted to him that he (Jackson) had offered a student money for oral sex. Accordingly, even if there was a Fifth Amendment violation, it was harmless error beyond a reasonable doubt.

### 3. The circuit court did not err in refusing to suppress evidence obtained from Jackson's home.

¶33. Jackson contends that any items seized from his home were acquired from an unlawfully obtained confession and therefore "fruit of the poisonous tree." As a result, he argues that the circuit court should have suppressed all evidence collected there.

¶34. We review the circuit court's denial of a motion to suppress evidence for abuse of discretion. *Goff v. State*, 14 So. 3d 625, 641 (¶47) (Miss. 2009). We will not disturb the circuit court's decision unless we find the circuit court "applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence." *Simmons v. State*, 805 So. 2d 452, 482 (¶64) (Miss. 2001) (quoting *Taylor v. State*, 733 So. 2d 251, 255 (¶18) (Miss. 1999)).

¶35. The exclusionary prohibition against "fruit of the poisonous tree" applies to violations of the Fifth Amendment privilege against self-incrimination. *See Brown v. Illinois*, 422 U.S. 590, 599-601 (1975). Our supreme court has held "that the fruit of the poisonous tree doctrine is defeated where the confession is judged admissible." *Yates v. State*, 467 So. 2d

17

884, 887 (Miss. 1984) (citing *Wiley v. State*, 449 So. 2d 756, 759-60 (Miss. 1984)).

¶36. As previously discussed, we find that Jackson's confession was admissible. Therefore, any items seized as a result would not be "fruit of the poisonous tree." However, even if that were not the case, the search warrant clearly indicated that the underlying facts and circumstances derived solely from the minor victim's statement and the evidence that was evident on his phone. Investigator Hardin also testified to that effect at the first hearing on the motion to suppress. Thus, the police would have discovered that information without Jackson's statement. It was inevitable. The minor gave a statement to the police about Jackson's actions. During that statement, K.B. showed the police the text messages on his cell phone, corroborating his account to the police. Simply put, the police were going to seek a search warrant for Jackson's home whether or not Jackson gave a statement. For these reasons, the circuit court did not abuse its discretion in denying Jackson's motion to suppress.

### 4. The circuit court did not abuse its discretion in limiting Jackson's theory of defense regarding consent and extortion.

¶37. Jackson next argues that the circuit court erred in denying him an opportunity on cross-examination to present evidence showing K.B.'s consent to oral sex and his extortion of Jackson. "Limitations placed on cross-examination are reviewed using an abuse-of-discretion standard." *Ervin v. State*, 136 So. 3d 1053, 1058 (¶13) (Miss. 2014).

¶38. During K.B.'s cross-examination, Jackson attempted to introduce vulgar song lyrics from songs he learned about from K.B. Jackson argued that the lyrics went to K.B.'s credibility and whether he was enticed to engage in the offered sexual activity. The State

18

argued that consent is not a defense to child exploitation. The circuit court stated, "[I]f the defense wishes to portray the alleged victim in this case, a child, as a money-seeking individual, I think he can do that, but I'm not going to allow it through the use of these songs . . . ." Ultimately, the circuit court ruled that the evidence was irrelevant and that even if it were relevant it was more prejudicial than probative. We agree.

¶39.   Jackson's attempt to introduce graphic, vulgar song lyrics as a defense to exploitation of a minor is misguided and disingenuous. The law is clear: adults are prohibited from enticing minors to engage in sexually explicit conduct. A defendant cannot solicit sex with a minor and then claim as a defense that the minor wanted to have sex. The law does not afford such a defense. Be that as it may, the lyrics in the songs Jackson wanted to introduce did not prove what he asserted they did.

¶40.   Further, Jackson also claimed that K.B. sent him a blackmail letter.[11]   On cross-examination, Jackson tried to question Investigator Jenkins and Fenster about the blackmail letter, but the State objected. The circuit court prohibited the questioning, reasoning that any evidence of extortion was not a defense to child exploitation and therefore irrelevant. Further, there was no evidence a blackmail letter ever existed. Finally, the information about the blackmail letter inadvertently came into evidence during Jackson's statement to the police. Therefore, although it was irrelevant, the jury heard Jackson's extortion claim when it watched his confession.

---

[11] No blackmail letter was ever recovered.

19

¶41. After review, we find the circuit court did not abuse its discretion in excluding Jackson's proposed song lyrics and evidence of extortion. As recognized by the circuit judge, consent and extortion are not defenses to child exploitation.

**5.      The circuit court did not abuse its discretion in refusing Jackson's proposed jury instructions.**

¶42. "Jury instructions are generally within the discretion of the trial court and the settled standard of review is abuse of discretion." *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)). "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Id*. (quoting *Young v. State*, 891 So. 2d 813, 819 (¶16) (Miss. 2005)). "When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id*. (citing *Newell*, 49 So. 3d at 73 (¶20)). Our supreme court "has held that 'a defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.'" *Id*. (quoting *Hearn v. State*, 3 So. 3d 722, 738 (¶45) (Miss. 2008)).

¶43. Jackson contends the circuit court erred in refusing to give jury instruction D-2 regarding computer luring. Jury instruction D-2 read:

> If you find that the State did not prove any one of the elements of the crime charged, then you must find Michael D. Jackson not guilty of that crime. You may then proceed with your deliberations to decide whether the State has

proved beyond a reasonable doubt all of the elements of the lesser crime of Computer Luring.

Therefore, if you find beyond a reasonable doubt from the evidence in this case that Michael D. Jackson did:

1.    On or about or between November 22, 2013 through December 16, 2013, in Lowndes County Mississippi;

2.    Knowingly and intentionally use any computer communication system allowing the input, output, examination or transfer of computer data or computer programs from one (1) computer to another, to initiate or engage in such communication with a person under the age of eighteen (18); and

3.    By means of such communication he importunes, invites or induces a person under the age of eighteen (18) years to engage in sexual intercourse, deviant sexual intercourse or sexual contact with him, or to engage in sexual performance, obscene sexual performance or sexual conduct for his benefit then you shall find Michael D. Jackson guilty of the lesser offense of Computer Luring.

If the State did not prove any one of the above listed elements beyond a reasonable doubt, then you shall find Michael D. Jackson not guilty of Computer Luring.

The court refused instruction D-2 because the elements of computer luring and exploitation of a child are practically identical, and therefore the jury could not find Jackson guilty of both the lesser offense, computer luring, and the more serious offense of exploitation of a child.

¶44.   Mississippi Code Annotated section 97-5-27(3)(a) (Supp. 2013) lists the elements of computer luring:

A person is guilty of computer luring when:

(I) Knowing the character and content of any communication of sexually oriented material, he intentionally uses any computer communication system

21

allowing the input, output, examination or transfer of computer data or computer programs from one (1) computer to another, to initiate or engage in such communication with a person under the age of eighteen (18); and

(ii) By means of such communication he importunes, invites or induces a person under the age of eighteen (18) years to engage in sexual intercourse, deviant sexual intercourse or sexual contact with him, or to engage in a sexual performance, obscene sexual performance or sexual conduct for his benefit.

¶45. Jackson was indicted pursuant to Mississippi Code Annotated section 97-5-33(6), which reads:

No person shall, by any means including computer, knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet with the defendant or any other person for the purpose of engaging in sexually explicit conduct.

¶46. We agree with the circuit court's finding that the elements of both crimes are practically identical and that Jackson cannot be found guilty of both the lesser offense of computer luring and exploitation of a child. Further, no reasonable juror could find Jackson not guilty of exploitation and then under the same proof and same elements find him guilty of computer luring. *See Rowland v. State*, 531 So. 2d 627, 631-32 (Miss. 1988) (stating that it is "extremely unlikely" for an accused to be guilty of the greater offense without also being guilty of the lesser offense)). The grand jury indicted Jackson for exploitation of a minor, and he was either guilty or not guilty of that crime.

¶47. Jackson next argues that the circuit court erred in denying jury instruction D-4, a lesser-included-offense instruction on obscene electronic communications. Jury instruction D-4 read:

If you find that the State did not prove any one of the elements of the crime charged, then you must find Michael D. Jackson not guilty of that crime. You may then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of obscene electronic communications.

Therefore, if you find beyond a reasonable doubt from the evidence in this case that Michael D. Jackson did:

1. On or about or between November 22, 2013 through December 16, 2013, in Lowndes County, Mississippi;

2. Unlawfully make a comment, request, suggestion or proposal;

3. By means of telecommunication, or electronic communication;

4. Which is obscene, lewd or lascivious;

5. With intent to abuse, threaten or harass any party to a telephone conversation, telecommunication or electronic communication, then you shall find Michael D. Jackson guilty of obscene electronic communications.

If the State did not prove any one of the above listed elements beyond a reasonable doubt, then you shall find Michael D. Jackson not guilty of obscene electronic communications.

¶48. The circuit court refused the instruction because there was no evidence presented that Jackson intended to "abuse, threaten, or harass." A circuit court may refuse a jury instruction if there is no evidence to support it. *Hye v. State*, 162 So. 3d 750, 753 (¶5) (Miss. 2015). After review of the record, we find no evidence showing that Jackson intended to abuse, threaten, or harass K.B. Thus, the circuit court was within its discretion to refuse jury instruction D-4.

**6. The circuit court did not abuse its discretion in allowing Fenster's**

23

**testimony.**

¶49. On appeal, Jackson challenges the circuit court's admission of Fenster's testimony, claiming he was prejudiced as a result. At trial, the defense objected to Fenster testifying because Fenster was not provided as a witness in the original discovery. The State replied that it provided the defense a copy of Fenster's statement as soon as it was discovered in the file—about ten days before trial. Jackson made no effort to show how or why ten days was an insufficient period of time to prepare for such evidence.

¶50. Nevertheless, "[t]he standard of review for the trial court's ruling on a discovery violation is abuse of discretion." *O'Neal v. State*, 977 So. 2d 1252, 1254 (¶10) (Miss. Ct. App. 2008). Mississippi Rule of Criminal Procedure 17.9(b) outlines the procedures to apply when the State attempts to enter previously undisclosed evidence over the defendant's objection:

> If, during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these Rules and the defense objects to the introduction for that reason, the court shall:
>
> (1) Grant the defense a reasonable opportunity to interview the newly discovered witness and/or examine the newly produced documents, photographs or other evidence.
>
> (2) If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence, grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence, or grant a mistrial. . . .

¶51. The circuit court complied with subsection 1, allowing Jackson as much time as he

24

needed to interview Fenster. After the interview, Jackson made no other objections regarding Fenster as a witness. Nor did he motion for a mistrial or motion to continue. Because Jackson did not claim he needed additional time or that was prejudiced after his opportunity to interview Fenster, he is barred from doing so on appeal. *See Cole v. State*, 525 So. 2d 365, 368 (Miss. 1987).

### 7. The circuit court did not abuse its discretion in denying Jackson's motion for a new trial.

¶52. Jackson argues that the circuit court erred in denying his motion for a new trial. A motion for a new trial challenges the weight of the evidence. *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013). We review the circuit court's denial of a motion for a new trial for abuse of discretion. *Id*. "Our role as appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017).

¶53. Jackson argues the jury considered screen shots that were "manipulated" by K.B., as evidenced by testimony indicating that portions of the conversation were missing from the screen shots.[12] First, Jackson presented no proof that K.B. manipulated the screen shots by deleting some of his and K.B.'s messages. Second, and more important, it does not matter whether K.B. deleted any messages. What matters are the undeleted messages from Jackson

---

[12] The texts deleted stated, "wake up," "oh," "?," "um," and "it's the best time to do it."

to K.B., offering K.B. up to $275 to receive oral sex. Those messages clearly show that Jackson was in violation of Mississippi Code Annotated section 97-5-33(6).

¶54. When viewing all the evidence in the light most favorable to the verdict, including K.B.'s testimony, the text messages, and Jackson's confession, the verdict against Jackson does not sanction an unconscionable injustice. Accordingly, the circuit court did not abuse its discretion in denying Jackson's motion for new trial.

## CONCLUSION

¶55. We find that Jackson was not entitled to a probable cause hearing under Mississippi Code Annotated section 99-3-28(1)(a). We also find that the circuit court did not err in admitting into evidence Jackson's confession and evidence obtained from his home. Further, we find the circuit court did not abuse its discretion in excluding from evidence Jackson's vulgar song lyrics and any evidence of extortion. The circuit court did not abuse its discretion in refusing Jackson's proposed jury instructions. Nor did the circuit court abuse its discretion in allowing Fenster to testify. Finally, the circuit court did not err in denying Jackson's motion for a new trial. Accordingly, we affirm the circuit court's judgment.

¶56. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL AND C. WILSON, JJ., CONCUR. BARNES, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD AND McCARTY, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND McDONALD, J.; McCARTY, J., JOINS IN PART.**

26

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶57. I agree that the weight of the evidence against Jackson is solidly overwhelming, and in keeping with our Court's holding in *Bostic v. State*, 282 So. 3d 423, 431 (¶31) (Miss. Ct. App. 2019), which cites the Supreme Court's holding in *Hutto v. State*, 227 So. 3d 963, 980 (¶49) (Miss. 2017), that the violation of a constitutional right may be harmless error, I concur in part. While I am bound to follow that settled holding in our State law, I cannot further erode constitutional principles and agree that an accused's invoking his right to counsel is ambiguous subsequent to him inviting questioning by law enforcement. In the face of a clear assertion, that is not the law. Therefore, I can not agree that Jackson's statement that "I would just rather wait until I consult with a lawyer" was ambiguous, leaving the trained officers confused and unclear about whether he wanted the assistance of counsel. Jackson clearly and unambiguously invoked his constitutional right to counsel. This is where I depart from the majority's opinion and write separately.

**FACTS AND PROCEDURAL HISTORY**

¶58. To avoid repetition, I will reiterate the relevant excerpts of the interrogation transcript for emphasis:

> I, Michael Jackson, make the following statement to Inv. Timothy Jenkins, Whom I know to be Police Officers of the Columbus, Mississippi, Police Department. I have been advised that I do not have to make a statement and, if I do, anything I say can be used against me in a court of law. I have been advised that I am entitled to legal counsel before making any statements. Having been so advised and not being threatened in any way or promised any rewards or leniency that would entice me to make a statement, I do make the following statement free and voluntarily:

27

Jenkins:      You requested to speak to me, is that right?

Jackson:      Uh huh.

Jenkins:      **Again, I'm Investigator Jenkins, that's Investigator McCrary. Before we get started talking, earlier today when we started the interview, I read your rights to you correct?**

* * * * *

Jenkins:      Now, you are willing to waive that right and speak to me again?

Jackson:      I want to tell you about the situation.

Jenkins:      Look, before that, I can't listen to anything like that, you see what I'm saying, to cover myself.

Jackson:      Okay.

Jenkins:      I need to read you your writes again and if you want to talk to me after that, we can do that okay.

Jackson:      **Okay. I would just rather wait until I consult with a lawyer.**

Jenkins:      **Okay, that's fine. Um since we are in here, I do have to read your rights again, and then we will go through the whole you want to speak to a lawyer, okay?**

* * * * *

¶59.    During the suppression hearing, Jenkins acknowledged in his testimony that Jackson requested an attorney. Further, during the suppression hearing, Jenkins admitted he did nothing to assist Jackson in obtaining counsel as requested. The record does not demonstrate that Jackson waived his right to counsel or that Jenkins was confused about whether or not Jackson requested an attorney. Instead, Jenkins stated he told his commander and went back

28

to his desk to work on other cases. After hearing arguments on the motion to suppress, the circuit court rejected Jackson's arguments that his constitutional rights were violated. Specifically, the circuit court stated that "the degree of misconduct, if any, in the instant case was of a slight degree and may have been the result of simple negligence. Thus, the Court finds that this factor weighs in favor of admissibility."

¶60. During trial, Jenkins testified that Jackson asked to speak with him again. Hours after the first interview, Jackson invoked his right to counsel but was never afforded any legal counsel. Jackson had been in custody for at least three hours with no food or drink. During that time, Jackson requested to speak with Jenkins, who brought him lunch. Jenkins testified at trial he thought it was Investigator Tommy Watkins who came and told him Jackson wanted to talk. Jenkins, now accompanied by Investigator Kevin McCrary, met with Jackson around 3:23 p.m. Once in the room, Jackson responded to Jenkins's clarifying question regarding whether Jackson had requested to speak to them? Jackson stated, "Uh huh." Jenkins asked, "[A]re you willing to waive that right and speak to me again?" Jackson said, "I want to tell you about the situation." Seconds later, Jenkins stated, "I need to read you your rights again and if you want to talk to me after, we can." Jackson's immediate, unambiguous response was, "**Okay. I would rather wait until I consult with a lawyer**." Jenkins responded by saying, "**Okay, that's fine**. Um since we're here . . . ." Jenkins offered no testimony about being confused or unclear as to what Jackson meant after Jackson's second request for counsel. Regardless, Jenkins read Jackson his rights and continued with

the questioning.

¶61.    At trial, after the video of Jenkins and Jackson was played, defense counsel took issue with the second interrogation of Jackson by Jenkins and McCrary and the second invocation of the right to counsel. After a lengthy discussion in chambers, the trial judge said, "I'm going to rule that there was a second waiver of his rights and that it was knowingly and voluntarily made." The trial judge determined that ultimately any objections to the confession had already been discussed and handled in the suppression hearing prior to trial. Jackson's attorney cleverly made a motion for mistrial. The circuit court heard the motion and ultimately held firm on its decision by stating that after Jackson's second request for a lawyer, he "knowingly and voluntarily waived his right to counsel after having asserted that right the second time."

## DISCUSSION

¶62.    "Due to the fact-specific nature of requests for counsel and *Miranda* waivers, the applicable law has become muddled. Accordingly, we review such requests on a case-by-case basis." *Downey v. State*, 144 So. 3d 146, 150 (¶7) (Miss. 2014). Further, our Supreme Court has stated that "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." *Hutto v. State*, 227 So. 3d 963, 980 (¶49) (Miss. 2017). "Under the Fifth Amendment, a person may invoke his right to counsel at any time **prior to or during custodial interrogation**." *Smith v. State*, 977 So. 2d 1227, 1230 (¶8) (Miss. Ct.

30

App. 2008) (emphasis added) (citing *Holland v. State*, 587 So. 2d 848, 856 (Miss. 1991)).

The Mississippi Supreme Court has held that the right to counsel in Article 3, Section 26 "of

the Mississippi Constitution is congruent with the right to counsel guaranteed by the Fifth

and Sixth Amendments" to the United States Constitution, except the Sixth Amendment right

attaches earlier under Mississippi statutory law. *Franklin v. State*, 170 So. 3d 481, 486 (¶20)

(Miss. 2015) (citing *Grayson v. State*, 806 So. 2d 241, 247 (¶20) (Miss. 2001)).[13]

¶63.    Both the state and federal constitutions guarantee that the right to counsel may be

invoked at any time prior to or during police interrogation. *Smith v. State*, 977 So. 2d 1227,

1230 (¶8) (Miss. Ct. App. 2008).  Our Supreme Court has specifically stated that "[t]he right

to counsel may be invoked specifically in any manner and at any stage of the interrogation

process." *Downey*, 144 So. 3d at 151 (¶10) (citing *Holland*, 887 So. 2d at 85).  Jackson's

choice of words that he would "just rather wait" and "until I consult with a lawyer" was a

conscious choice not to continue to talk to Jenkins and McCrary and a clear, unambiguous

assertion of his right to counsel.  There was nothing confusing or unclear necessitating

further clarification or a safe harbor to resort to for protection for the officers. Jenkins's

---

[13] In *Franklin*, 170 So. 3d at 492 (¶40) (Kitchens, J., concurring in part and dissenting in part), Justice Kitchens wrote separately that the Mississippi Constitution provides greater protection to criminal suspects' invocation of counsel during interrogations than does the United States Constitution. *Accord* Miss. Const. art. 3, § 26; *see also Downey v. State*, 144 So. 3d 146, 152 (¶9) (Miss. 2014) ("*Davis* does not require Mississippi to follow the minimum standard that the federal government has set for itself.  We are empowered by our state constitution to exceed federal minimum standards of constitutionality and more strictly enforce the right to counsel during custodial interrogations.").

"Okay, that's fine" statement was a definite and clearly communicated affirmation that Jackson invoked his right to counsel a second time.

¶64. To continue, the majority opines that Jenkins and McCrary were confused or unclear, but that state of mind is not expressed during the interrogation, nor is it present in the record. This conception is actually an assumption because at no point in the record does either officer testify, say, or even imply that he was confused, unclear, unsure, or perplexed. Jackson's assertion was crystal clear compared to the accused in *Davis v. United States*, who just remarked, "*Maybe* I should talk to a lawyer." *Davis v. United States*, 512 U.S. 453, 455 (1994) (emphasis added); *see also Barnes v. State*, 158 So. 3d 1127, 1135 (¶26) (Miss. 2015). The defendant ambiguously requested an attorney when he stated, "[M]aybe I should get an attorney." During the suppression hearing in *Barnes*, a fire investigator testified that he stopped the questioning and gave Barnes the option to continue. He admitted on the stand what he needed to hear in order to cease the questioning.

¶65. Here, Jackson unambiguously invoked his right (unlike John Lee Franklin, who commented that he needed some help when he was arrested and questioned for arson). *Franklin*, 170 So. 3d at 485 (¶13). In *Davis*, *Barnes*, and *Franklin*, there was equivocation and ambiguity. In *Barnes*, the officer testified what words would have made Barnes's assertion clear. *Barnes*, 158 So. 3d at 1131 (¶10). This was not the case with Jackson and is distinguishable from the authority previously cited. Jackson's statement or assertion was far from ambiguous, and it was not an effective waiver of his right to counsel. Next, Jenkins

32

never said or testified that he was unclear about Jackson's statement. In *Franklin*, our Supreme Court cited *Davis*, finding the following:

> *Davis* carefully reiterated that, if a suspect effectively waives his or her right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him or her . . . . *But if a suspect affirmatively requests counsel at any time during the interview, he or she is not subject to further questioning until a lawyer is made available or the suspect reinitiates conversation.*

*Franklin*, 170 So. 3d at 491 (¶34) (emphasis added)). When an accused clearly expresses his desire or choice to consult an attorney prior to the reading of his *Miranda* rights, the recitation of the rights becomes moot because there should be no further interrogation or exchange between the suspect and investigators.

¶66.    Jackson did not reinitiate a conversation with Jenkins after invoking his right to counsel. Jackson unambiguously requested counsel. Earlier in the day, when Jackson first invoked his right to counsel, Jenkins properly ended all communication with Jackson and left the room. Jackson initiated the second conversation with Jenkins shortly after 3:00 p. m., but not long after Jenkins entered the room, Jackson asserted his right to counsel a second time. After making the second request for counsel, Jackson did not reinitiate the conversation. Jenkins kept going since he was already there. Once Jackson asserted his right to counsel, Jenkins had no reason to attempt to have Jackson sign a waiver or explain anything further because Jackson's clear assertion rendered that effort moot. When Jackson made his clear request for counsel, any further questioning should have been limited to identifying and obtaining the counsel as requested. *Downey*, 744 So. 3d at 152 (¶11).

33

¶67. There was no ambiguity, and the record does not support that Jenkins or McCrary were unsure or confused about what Jackson said. Jackson was not required to use specific language such as "I want a lawyer." *Id*. at 151 (¶10) (quoting *Montoya v. Collins*, 955 F.2d 279, 283 (5th Cir. 1992)). However, Jackson did specifically express to Jenkins and McCrary his choice to wait until consulting with an attorney. It was improper for Jenkins to proceed with any questions outside the scope of obtaining an attorney for Jackson. I agree with the outcome pursuant to *Bostic* and *Hutto*, but I cannot agree with the majority's opinion insofar as it fails to recognize the clear violation of Jackson's right to counsel.

¶68. For the foregoing reasons, I write separately.

**BARNES, C.J., AND McDONALD, J., JOIN THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**